**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

FRANK J. POVOSKI, JR.,

                              Plaintiff,

              v.                                                  No. 9:14-CV-97
                                                                  (BKS/CFH)
STEVEN LACY, et al.,

                              Defendants.

_____

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**


**APPEARANCES:**                              **OF COUNSEL:**


Frank J. Povoski, Jr.
05-B-2531
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821

Eric T. Schneiderman                          TIFFINAY M. RUTNIK, ESQ.
Attorney General of the                       Assistant Attorney General
    State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**REPORT-RECOMMENDATION AND ORDER**[1]

        Plaintiff pro se Frank J. Povoski, Jr., an inmate who was, at all relevant times, in the

custody of the New York State Department of Corrections and Community Supervision

("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants violated

his constitutional rights under the First, Eighth, and Fourteenth Amendments.  See Dkt. No.

_____

        [1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C.
§ 636 (b) and N.D.N.Y.L.R. 72.3 (c).

42 ("Am. Compl."). At all relevant times, plaintiff was incarcerated at Clinton Correctional

Facility ("Clinton C.F."). Plaintiff commenced this action on January 29, 2014, seeking a

declaratory judgment and injunctive relief, as well as compensatory and punitive damages.

Dkt. No. 1 ("Compl.") at 32-34. After an initial review of plaintiff's complaint, Senior District

Judge Lawrence E. Kahn dismissed certain claims without prejudice, and allowed plaintiff

the opportunity to file an amended complaint. Dkt. No. 9 at 18. Plaintiff submitted a

proposed amended complaint on August 1, 2014. Dkt. No. 30. After initial review of the

amended complaint,[2] the following claims remain: (1) due process claims arising from a

November 2010 hearing against defendants Corrections Captain ("Capt.") Steven Lacy,

Corrections Officer ("C.O.") Patrick Summo, Director of Special Housing ("DSH") Albert

Prack, and Superintendent ("Supt.") Thomas LaValley; (2) retaliation claims against

defendants Capt. Lacy, Sergeant ("Sgt.") Thomas Tamer, C.O. Richard Mahuta, C.O. Brian

Kelly, C.O. John Crusie, Lieutenant ("Lt.") William Allan, Supt. LaValley, C.O. James Pray,

and Sgt. James Archambault; (3) conspiracy claims against Capt. Lacy, Supt. LaValley,

C.O. Mahuta, Sgt. Tamer, C.O. Kelly, C.O. Crusie, C.O. Allan, C.O. Pray, and Sgt.

Archambault; (4) denial of access to the courts claims against Capt. Lacy, and C.O. Allan;

(5) conditions of confinement claims against Supt. LaValley, Capt. Lacy, and C.O. Allan; and

(6) excessive force claims against C.O. Allan, C.O. Pray, and Sgt. Archambault. Dkt. No. 41

at 23-24. Presently pending is defendants' partial motion to dismiss pursuant to Federal

---

[2] This action was reassigned to District Judge Brenda K. Sannes by Order of Chief Judge Gary L. Sharpe, entered December 29, 2014. Dkt. No. 40. Judge Sannes reviewed the proposed amended complaint. Dkt. No. 41.

Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6).[3] Dkt. No. 65. Plaintiff opposes the

motion and requests to file a Second Amended Complaint. Dkt. No. 103. For the following

reasons, it is recommended that defendants' motion be granted in part and denied in part.


## II. Background

The facts are reviewed in the light most favorable to plaintiff as the non-moving party.

See subsection III(A) infra. Because defendants are moving to dismiss only a portion of

plaintiff's claims, plaintiff's allegations are summarized below only to the extent that they are

relevant to the pending motion.


## A. Plaintiff's Recitation of Facts

### 1. Conspiracy to Discipline and Confine Plaintiff

In May 2010, plaintiff was elected to the Inmate Liaison Committee ("ILC"). Am.

Compl. ¶ 9. The ILC "investigate[s] and facilitate[s] facility-wide grievances that effect the

inmate population as a whole or part, and communicate[s] those grievances to

administration . . . ." Id. Plaintiff alleges that, during his time as a member of the ILC, the

ILC investigated, among other things, the death of an inmate, Leonard Strickland, that

occurred at Clinton C.F. on October 2, 2010, as well as the alleged misappropriation of

funds obtained through vending machine sales in the visiting room at Clinton C.F. Id. ¶ 10.

In November 2010, the ILC prepared eleven grievances to be submitted to the

---

[3] The partial motion to dismiss was initially filed on behalf of defendants Crusie, Kelly, LaValley, Lacy, Mahuta, Prack, Summo, and Tamer, only. Dkt. No. 65. On September 28, 2015, the Court granted defendant Allan's letter request (Dkt. No. 81) to join the motion. Dkt. No. 84. On December 3, 2015, the Court granted defendants Pray and Archambault's letter request (Dkt. No. 100) to join the motion. Dkt. No. 101.

Executive Team at Clinton C.F., which included defendants Supt. LaValley and Capt. Lacy. Am. Compl. ¶ 11.  On November 22, 2010, the ILC met with the Executive Team to discuss the grievances, including the death of Strickland, and the misappropriation of the vending machine funds.  Id. ¶ 12.  During that meeting, plaintiff also complained that the ILC's requests to inspect the records from the vending machine sales were being ignored, and asked the Executive Team to have the records produced.  Id. ¶ 14.  Plaintiff also complained at this meeting that Inmate Account Statements were being discarded prior to being distributed to the inmates.  Id. ¶ 15.  Supt. LaValley allegedly told plaintiff that each individual inmate would need to request the reissue of their Inmate Account Statement, and gave plaintiff permission to draft a "prototype letter" to assist inmates in requesting the Statements.  Id.  On November 23, 2010, plaintiff prepared and sent Supt. LaValley a copy of the prototype letter.  Id. ¶ 16.

On November 24, 2010, defendant C.O. Mahuta observed plaintiff providing the prototype letter to three inmates.  Am. Compl. ¶¶ 17-18.  C.O. Mahuta approached plaintiff and inquired about the letter.  Id. ¶ 18.  After plaintiff explained the purpose of the letter, C.O. Mahuta confiscated the remaining prototype letters.  Id. ¶¶ 18-19.  C.O. Mahuta then contacted defendant Sgt. Tamer and proceeded to the Disciplinary Office to inquire what charges he could bring against plaintiff based on his creation and possession of the prototype letter.  Id. ¶¶ 20-21.  Plaintiff alleges that at least one hearing officer in the Disciplinary Office told C.O. Mahuta that plaintiff had not violated any Standard of Inmate Behavior.  Id. ¶ 21.  Sgt. Tamer then allegedly told C.O. Mahuta about plaintiff's complaints and grievances, as stated at the November 22, 2010 ILC meeting, and that Supt. LaValley and Capt. Lacy wanted plaintiff to receive a Tier III misbehavior report, so that he could be

sent to the Special Housing Unit ("SHU") and removed from the ILC. Id. ¶¶ 22-23. C.O.

Mahuta and Sgt. Tamer then issued plaintiff a misbehavior report using two charges, despite

knowing that the charges were false. Id. ¶¶ 24-25.

Following Mahuta's confiscation of plaintiff's prototype letters on November 24, 2010,

plaintiff proceeded to the scheduled ILC meeting on that date. Am. Compl. ¶ 28. At the ILC

meeting, plaintiff received a letter, sent to inmate Hector Torres from a civilian, alleging that

Capt. Lacy was a "Grand Wizard" in the local chapter of the Ku Klux Klan ("KKK"). Id.

Plaintiff placed the letter in his ILC folder. Id. Upon plaintiff's return to his housing block,

officers confiscated his ILC materials, including the KKK letter. Id. ¶ 31. The officers

contacted C.O. Mahuta, who reviewed the papers, including the KKK letter, and forwarded

the letter to Capt. Lacy and Sgt. Tamer for inspection. Id. ¶ 32.

Plaintiff alleges that, after the inspection of the KKK letter, Capt. Lacy, Supt. LaValley,

Sgt. Tamer, and C.O. Mahuta hatched a plan wherein they would search plaintiff's cell with

the purpose of discovering contraband, and if contraband were not found, they would plant it

so that plaintiff would receive a rule violation. Am. Compl. ¶ 33. Plaintiff alleges that Sgt.

Tamer asked defendants C.O. Kelly and C.O. Crusie to search plaintiff's cell and make sure

they found "something substantial" such that plaintiff would receive a Tier III misbehavior

report and receive SHU time. Id. ¶ 34. Sgt. Tamer also told C.O. Kelly and C.O. Crusie that

he would provide them with contraband to plant in plaintiff's cell should they fail to find any

contraband. Id. C.O. Kelly and C.O. Crusie agreed. Id.

C.O. Kelly and C.O. Crusie entered plaintiff's cell to perform a search at

approximately 11:00 a.m. on November 24, 2010. Am. Compl. ¶ 35. During the search,

plaintiff alleges that he observed C.O. Crusie leave plaintiff's cell and then return a short

time later carrying rolled up papers.  Id. ¶ 36.  Later, Kelly issued a misbehavior report to plaintiff for his possession of escape paraphernalia, stating that he had discovered in plaintiff's cell a five-page pamphlet on how to pick locks.  Id. ¶ 37.

During the afternoon of November 24, 2010, non-party C.O. Trombley and Sgt. Tamer escorted plaintiff to the SHU.  Am. Compl. ¶ 41.  Tamer said to plaintiff: "This is what you get for suing me and sticking your nose into things where it doesn't belong. . . Lacy is going to give you two years.  I've already talked to him about it."  Id.  Following a disciplinary hearing, Capt. Lacy sentenced plaintiff to twenty-four months SHU confinement.  Id. ¶48(b).


## 2.  Conspiracy to Use Excessive Force/Use of Excessive Force

### a.  December 22, 2010 Incident

On December 22, 2010, while plaintiff was escorted to the hospital for "special watch," C.O. Allan and three unidentified officers punched plaintiff multiple times on his head, face, and body, and pushed him into a concrete wall while he was handcuffed and waist-chained.  Am. Compl. ¶ 136.  Plaintiff suffered bruising, contusions, and "other painful physical injuries."  Id.  Plaintiff alleges that, after the assault, C.O. Allan stated: "that will teach you for opening your mouth . . . and writing grievances."  Id. ¶ 137.


### b.  January 26, 2011 Incident

On January 26, 2011, C.O. Pray confiscated plaintiff's legal papers for inspection. Am. Compl. ¶ 140.  After reviewing the papers, C.O. Pray said to plaintiff: "So you are suing my buddy Kevin, we know how to fix inmates like you. . . ."  Id.  C.O. Pray and Sgt.

Archambault then escorted plaintiff to his video-conference court appearance, and taunted plaintiff, stating that they would assault him after the appearance, and that they knew the "ideal place to assault inmates," the Lower A/B Block corridor.  Id.  While escorting plaintiff back to the SHU after his appearance, and while stopped in the Lower A/B Block corridor, Sgt. Archambault said to C.O. Pray: "go ahead, the hallway's clear."  Id. ¶ 141.  C.O. Pray then pushed plaintiff into a brick wall and punched him multiple times on the head and neck while plaintiff was handcuffed and waist-chained.  Id. ¶ 139.  Plaintiff suffered bruising and contusions as a result of the attack.  Id.

### III.  Discussion

### A.  Legal Standard

Under Fed. R. Civ. P. 12 (b)(6), a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief can be granted."  When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor."  Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (quoting Holmes v. Grubman, 568 F.3d 326, 335 (2d Cir. 2009)) (internal quotation marks omitted).  However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief

that is "'plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a

probability requirement . . . it simply calls for enough fact to raise a reasonable expectation

that discovery will reveal evidence of illegal [conduct]."); see also Arar v. Ashcroft, 585 F.3d

559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts

to state a claim to relief that is plausible . . . .") (internal citations omitted).  Determining

whether plausibility exists is "a context-specific task that requires the reviewing court to draw

on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

　　　Where, as here, a party seeks judgment against a pro se litigant, a court must afford

the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471,

477 (2d Cir. 2006).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a *pro se*
> litigant is entitled to special solicitude, that a *pro se* litigant's
> submissions must be construed liberally, and that such
> submissions must be read to raise the strongest arguments that
> they suggest. At the same time, our cases have also indicated
> that we cannot read into *pro se* submissions claims that are not
> consistent with the *pro se* litigant's allegations or arguments that
> the submissions themselves do not suggest that we should not
> excuse frivolous or vexatious filings by *pro se* litigants, and that
> *pro se* status does not exempt a party from compliance with
> relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v.

Sealed Defendant #1, 537 F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous to

count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, . . . a court is

obliged to construe his pleadings liberally." (internal citations omitted)).

## B.  Statute of Limitations

-8-

Defendants argue that plaintiff's Eighth Amendment excessive force and conspiracy to use excessive force claims relating to the December 22, 2010 and January 26, 2011 incidents are time-barred. Dkt. No. 65-1 at 5-7. Plaintiff argues that these claims are not time-barred because the three-year statute of limitations was tolled while plaintiff pursued administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"). Dkt. No. 103 at 3.

The statute of limitations period for section 1983 claims brought in federal court in New York is three years, which accrues from the date "the plaintiff 'knows or has reason to know of the injury which is the basis of his action.'" Bradley v. Rell, 703 F. Supp. 2d 109, 125 (N.D.N.Y. 2010) (quoting Singleton v. City of N.Y., 632 F.2d 185, 191 (2d Cir. 1980), cert. den., 450 U.S. 920 (1981)) (additional citations omitted). However, the Second Circuit has held that equitable tolling is applicable to claims brought under the PLRA, otherwise a prisoner would risk the dismissal of his or her complaint based on untimeliness if he or she were to wait to receive a final administrative decision before filing suit. Gonzalez v. Hasty, 651 F.3d 318, 323-24 (2d Cir. 2011) (noting that the Ninth, Fifth, Seventh, and Sixth Circuits have all held that equitable tolling applies to the time period in which a prisoner is exhausting his or her administrative remedies). Under the Second Circuit's rule, the equitable tolling period begins when a plaintiff first raises his administrative claim, and ends when the plaintiff's administrative remedies are deemed exhausted. Id. at 324.

Here, plaintiff claims that he wrote and mailed grievances regarding the December 22, 2010 and January 26, 2011 incidents on December 28, 2010 and January 26, 2011, respectively. Am Compl. ¶¶ 138, 142. He further alleges, in his opposition papers, that he

received final notices of the Central Office Review Committee's (CORC)[4] decisions on his grievances on August 3, 2012,[5] and August 8, 2011, respectively. Dkt. No. 103 at 22. Plaintiff submitted his amended complaint in this action on August 1, 2014, asserting the excessive force claims.[6] Dkt. No. 30.

Based on plaintiff's assertions, the statute of limitations period for the December 22, 2010 incident was tolled between December 28, 2010 and August 3, 2012. The statute of limitations period for the January 26, 2011 incident was tolled from January 26, 2011 until August 8, 2011. Because plaintiff alleges that he was actively pursuing administrative remedies during these periods, the excessive force and conspiracy claims arising from the December 22, 2010 and January 26, 2011 incidents are timely, and well within the statute of limitations period as of the date that plaintiff filed his amended complaint on August 1, 2014.

Defendants' argument that plaintiff did not plead tolling in regards to the December 22, 2010 and January 26, 2011 incidents is unavailing. An inmate is entitled to notice and an opportunity to be heard on tolling arguments where a statute of limitations defense is raised by the defendants. See Abbas v. Dixon, 480 F.3d 636, 640-41 (2d Cir. 2007). Therefore, plaintiff was not obligated to plead tolling in his amended complaint.

Accordingly, it is recommended that defendants' motion on this ground be denied.

---

[4] CORC review is the last step in the administrative grievance process. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(d). Once CORC issues its decision, the claim is deemed exhausted, and the grievant may file suit in federal court. See Amador v. Andrews, 655 F.3d 89, 102 (2d Cir. 2011).

[5] The Court notes that plaintiff states that the date that he received CORC's response regarding the December 22, 2010 incident as August 3, 2012. Dkt. No. 103 at 20. However, the Second Amended Complaint attached to plaintiff's opposition papers notes this date as August 3, 2011. Dkt. No. 103-1 ¶ 137. In calculating the equitable tolling period, the use of either date would deem plaintiff's claims regarding the December 22, 2010 timely under the statute of limitations, as explained infra.

[6] The Court notes that, "a pro se prisoner's § 1983 complaint is deemed filed, for statute of limitations purposes, when it is delivered to prison officials." Tapia-Ortiz v. Doe, 171 F.3d 150, 152 (2d Cir. 1999).

### C. Intracorporate Conspiracy Doctrine

Defendants argue that plaintiff's conspiracy claims are barred by the intracorporate conspiracy doctrine.  Dkt. No. 65-1 at 7-8.  Plaintiff argues that the intracorporate conspiracy doctrine does not bar his claims because defendants were pursuing personal interests, and not acting within the scope of their employment, when they allegedly conspired.  Dkt. No. 103 at 24-33.

Under the intracorporate conspiracy doctrine, where a plaintiff alleges a conspiracy that is "'essentially a single act by a single corporation acting exclusively through its own . . . officers[ ] and employees, each acting within the scope of employment[,] there can be no actionable conspiracy.'"  Richard v. Fischer, 38 F. Supp. 3d 340, 353 (W.D.N.Y. 2014) (quoting O'Diah v. Neth, No. 6:10-CV-6592(MAT), 2013 WL 6440610, at *4 (W.D.N.Y. Dec. 9, 2013)).  However, where employees of an entity are "pursuing personal interests wholly separate and apart from the entity by whom they were employed[,]" the 'scope of employment' exception applies, and the conspiracy claim is not barred.  Id. (internal quotation marks and citations omitted).  Although the Second Circuit has not yet ruled on whether the intracorporate conspiracy doctrine can be applied to conspiracy claims against the State, several district courts in this Circuit have applied the doctrine to claims in which the State is the entity.  Medina v. Hunt, No. 9:05-CV-1460, 2008 WL 4426748, at *8 (N.D.N.Y. Sept. 25, 2008) (collecting cases).

The 'scope of employment" exception to the intracorporate conspiracy doctrine may apply where individuals pursue a personal interest "wholly separate and apart" from their duties as an employee of the entity.  Medina, 2008 WL 4426748, at *8.  However, a plaintiff must show more "than simply alleging that the defendants were motivated by personal bias

against the plaintiff.  Id. (citing Peters v. City of N.Y., No. 04-CV-9333, 2005 WL 387141, at

*3 (S.D.N.Y. Feb. 16, 2005) ("[P]ersonal bias is not the sort of individual interest that takes a

defendant out of the intraenterprise conspiracy doctrine where . . . the action complained of

arguably served a legitimate interest of [the employer]." (internal quotation marks and

citation omitted)).  Where the allegations in a complaint assert that the defendants were

acting through DOCCS "policies, customs, and practices," the 'scope of employment'

exception does not apply.  Orafan v. Goord, 411 F. Supp. 2d 153, 165 (N.D.N.Y. 2006),

vacated on other grounds, Orafan v. Rashid, 249 F. App'x 217 (2d Cir. 2007).


### 1.  Conspiracy to Use Excessive Force

Plaintiff alleges that C.O. Pray and Sgt. Archambault conspired to violate his Eighth

Amendment right to be free from excessive force when they assaulted him after his video-

conference court appearance on January 26, 2011.  Am. Compl. ¶¶ 139-41.

Courts in this district have applied the scope of employment exception to "more

egregious constitutional violations, such as unprovoked assaults[.]"  Toliver v. Fischer, No.

9:12-CV-00077 (MAD/ATB), 2015 WL 403133, at *22 (N.D.N.Y. Jan. 29, 2015).  Because

plaintiff has pled facts indicating that C.O. Pray and Sgt. Archambault were not acting within

their scope of employment, the exception is also applicable here.

Plaintiff alleges facts similar to those alleged in Medina, in which the 'scope of

employment' exception was applied to an unprovoked assault.  See Medina, 2008 WL

4426748, at *9.  Here, plaintiff alleges that C.O. Pray, after observing that plaintiff had

initiated a lawsuit against his friend and fellow corrections officer, told plaintiff that "[he]

kn[ew] how to fix inmates like [plaintiff]" and joked with Sgt. Archambault about their plans to

assault plaintiff following his video-conference court appearance. Am. Compl. ¶ 140.

Plaintiff further alleges that Sgt. Archambault checked to make sure the hallway was clear

before C.O. Pray assaulted plaintiff, who was "fully handcuffed and waist-chained" during

the assault. Id. ¶¶ 139, 141; see Medina, 2008 WL 4426748, at *9 (finding that the plaintiff's

allegations that the defendants checked to make sure the hallway was clear, and assaulted

the plaintiff while he was in mechanical restraints, plausibly suggested that the defendants

"were acting in their own interests."). Under these circumstances, plaintiff has alleged

sufficient facts showing that C.O. Pray and Sgt. Archambault "were pursuing interests wholly

separate and apart from those of [DOCCS,]" and the 'scope of employment' exception

applies. Medina, 2008 WL 4426748, at *9 (citing Hill v. City of N.Y., No. 03-CV-1283, 2005

WL 3591719, at *6 (S.D.N.Y. Dec. 30, 2005)).

    Accordingly, it is recommended that defendants' motion on this ground be denied.


### 2. Conspiracy to Discipline and Confine Plaintiff

    Plaintiff alleges that Supt. LaValley, Capt. Lacy, Sgt. Tamer, C.O. Mahuta, C.O. Kelly,

C.O. Crusie, and C.O. Allan conspired to discipline and confine him to the SHU in violation

of his constitutional rights. See section II.A.1 supra.

    Although courts in this circuit have applied the 'scope of employment' exception to

"more egregious constitutional violations, such as unprovoked assaults," they have

consistently declined to apply the exception to conspiracy charges relating to retaliation and

discrimination. Toliver, 2015 WL 403133, at *22 (citing Vega v. Artus, 610 F. Supp. 2d 185,

205-06 (N.D.N.Y. 2009)). Courts in this circuit have generally held that the intracorporate

conspiracy doctrine does not apply to instances where the plaintiff has claimed retaliation or

discrimination based only on a personal bias against the plaintiff.  See id. (dismissing

conspiracy claim where the plaintiff stated only a conclusory allegation that "the defendants

were . . . pursuing a 'personal' agenda"); Graham v. Peters, No. 13-CV-705JTC, 2013 WL

5924727, at *5 (W.D.N.Y. Oct. 31, 2013) (dismissing complaint where the defendants

provoked plaintiff, assaulted him, and filed disciplinary charges against him that were

ultimately reversed, all in retaliation for the plaintiff's criticism of the facility's staff and

programs); Rahman v. Fischer, No. 9:10-CV-1496 (LEK/TWD), 2012 WL 4492010, at *1, 13

(N.D.N.Y. Sept. 28, 2012) (dismissing conspiracy claim where the plaintiff alleged that the

defendants conspired against him to deny him access to class and a locker in retaliation for

his exercising his First Amendment religious rights as a Shiite Muslim); Vega, 610 F. Supp.

2d at 205-06 (dismissing conspiracy claim where the plaintiff alleged that the defendants

were motivated by their personal bias against the plaintiff's homosexuality).

Here, plaintiff alleges that the genesis of defendants' plan to confine him to the SHU

began when, during his tenure as a member of the ILC, he began to investigate the death of

a fellow inmate, and the possible misappropriation of vending machine sale funds.  Am.

Compl. ¶¶ 10-14.  What followed was an alleged conspiracy to write plaintiff multiple false

misbehavior reports, and plant contraband in plaintiff's cell.  See section II.A.1 supra.  The

conspiracy culminated in plaintiff's receiving a twenty-four month SHU confinement.  Am.

Compl. ¶ 48(b).  Liberally construed, plaintiff alleges that the alleged conspirators undertook

these actions in order to "chill" his speech, and stifle his participation in the ILC, in retaliation

for his participation in the investigations undertaken by the ILC.

While plaintiff's allegations do not fall squarely within the category of an unprovoked

use of excessive force, which would clearly fall within the 'scope of employment' exception,

neither do plaintiff's allegations fall squarely outside the 'scope of employment' exception.

As explained above, the caselaw in this circuit is clear that allegations of conspiracy to retaliate or discriminate against an inmate, motivated by personal bias alone, cannot overcome the intracorporate conspiracy doctrine when asserted against employees of a single entity. See Toliver, 2015 WL 403133, at *22. However, the Court finds that plaintiff asserts that the conspirators' personal interests were more than simply personal biases against plaintiff. Liberally construed, plaintiff claims that the defendants involved in the alleged conspiracy were acting in their own personal interests because plaintiff was questioning the death of an inmate, and the possible misuse of funds meant for inmates' benefit. Am Compl. ¶¶ 12-15. These allegations raise the inference that defendants were acting in their own self-interest, to protect themselves from discipline and even criminal charges. Plaintiff supports this inference in his opposition papers, where he states that he witnessed the death of Strickland, and gave statements to the Inspector General and the N.Y.S. Police Bureau of Criminal Investigations. Dkt. No. 103 at 26. Plaintiff further states that the alleged conspirators had "personal ties" to Strickland's death and acted to avoid possible criminal charges and liability. Id. at 28. In the Court's view, fear of criminal liability and an adverse employment action is a far cry from a simple personal bias.

Plaintiff's claim is readily distinguishable from cases that have dismissed conspiracy claims based on their conclusory nature. See Chamberlain v. City of White Plains, 986 F. Supp. 2d 363, 388-89 (S.D.N.Y. 2013) (finding no evidence of conspiratorial conduct where the plaintiff failed to allege what each defendant had done, or whether any defendant was aware of the prior conduct of his co-conspirators); Rahman, 2012 WL 4492010, at *13 n.18 (dismissing conspiracy claim where the claim was "largely duplicative" of other claims in the

complaint, and the plaintiff "allege[d] no discernible nexus between alleged events, alleged conspirators, alleged animus, and alleged constitutional injuries."). "To prove a § 1983 conspiracy, a plaintiff must show: 1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999) (citations omitted). However, "conspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence. Id. (citing Rounseville v. Zahl, 13 F.3d 625, 632 (2d Cir. 1994)) (internal quotation marks omitted).

Plaintiff provides the Court with a very detailed description of the alleged conspiracy, including: a description of the temporal proximity to an ILC meeting in which plaintiff demanded information regarding Strickland's death and financial statements from the vending machine sales fund; the officials who were involved in the alleged conspiracy; the role each official played in the alleged conspiracy; the motivation behind the alleged conspiracy; the actions that each alleged conspirator took; and a time line of the acts that took place. See Am. Compl. ¶¶ 11-48.

Further, at least part of the motivation among the alleged conspirators, according to plaintiff, was their involvement in the death of Strickland. See Am. Compl. ¶¶ 11, 13, 41; Dkt. No. 103 at 26-32. To the extent that plaintiff argues that defendants conspired to discipline and confine him in order to cover up a prior use of excessive force, such a claim has been held to overcome the intracorporate conspiracy doctrine. See Randle v. Alexander, 960 F. Supp. 2d 457, 475-76 (S.D.N.Y. 2013) (declining to dismiss complaint based on the intracorporate conspiracy doctrine where the plaintiff alleged that the

defendants had a standing agreement to force inmates to fight each other, block the fights from other inmates' views, and write false incident reports); Hill, 2005 WL 3591719, at *6 (finding a question of fact as to whether the defendant was acting in his own personal interest when he conspired with others to cover-up his use of excessive force).  Although plaintiff's allegations of defendants' motives as connected to his discipline are tenuous, the Court finds that without caselaw to the contrary, and given plaintiff's pro se status, he has pled sufficient facts to defeat defendants' motion to dismiss.  His allegations plausibly suggest that defendants were acting outside the scope of their employment when they conspired to bring false misbehavior reports and disciplinary action against plaintiff.  See Chillemi v. Town of Southampton, 943 F. Supp. 2d 365, 381-82 (E.D.N.Y. 2013) (denying motion to dismiss where the complaint "appear[ed]" to go beyond personal bias where the plaintiff alleged that the defendants fabricated the charges against him).

Accordingly, it is recommended that defendants' motion on this ground be denied.


### D.  Eleventh Amendment Immunity

### 1. Supt. LaValley

Defendants contend that plaintiff's claims against LaValley in his official capacity should be dismissed because the Eleventh Amendment such claims.  Dkt. No. 65-1 at 8-9. Plaintiff argues that the Eleventh Amendment does not bar suit against LaValley in his official capacity to the extent that plaintiff requests injunctive relief.[7]  Dkt. No. 103 at 34-41.

The Eleventh Amendment provides that "[t]he Judicial power of the United States

---

[7]  Plaintiff also clarifies that he is only suing Supt. LaValley in his official capacity to the extent that he requests injunctive relief.  Dkt. No. 103 at 35.

shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)).  Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. Halderman, 465 U.S. at 100.  Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. See Quern v. Jordan, 440 U.S. 332, 340-41 (1979).

In Ex parte Young, the Supreme Court held that the Eleventh Amendment does not prohibit the issuance of an injunction. Ex parte Young, 209 U.S. 123, 160 (1908).  The reasoning in Ex parte Young held that an unconstitutional enactment is void, and the Eleventh Amendment does not apply to "'impart to [the officer] any immunity from responsibility to the supreme authority of the United States.'" Halderman, 465 U.S. at 2 (quoting Ex parte Young, 209 U.S. at 160).  Where a plaintiff invokes the doctrine established in Ex parte Young, the suit "is not deemed to be an action against the state. Instead, such an action proceeds against the state officer who, by acting contrary to federal law, acts without authority and therefore, under these circumstances, does not act in a representative capacity." Lowrance v. Coughlin, 862 F. Supp. 1090, 1097 (S.D.N.Y. 1994) (footnote omitted).

Here, plaintiff requests injunctive relief in the form of: (1) the return of two legal research notebooks; (2) complete expungement of his institutional and parole records

relating to the December 6, 2010 disciplinary hearing and SHU confinement; and (3)

allowing the plaintiff an opportunity to review his institutional and parole records, after the

expungement is effected, for their accuracy.  Am. Compl. at 70-71.  Plaintiff cites Lowrance

in support of his position.  In Lowrance, the Court allowed a suit to proceed against certain

defendants in their official capacity, as plaintiff requested prospective relief by requesting

that the Court order the defendants to expunge misbehavior reports that had previously

been ordered expunged, yet the officials had not complied with that order.  Lowrance, 862 F.

Supp. 1090, 1097-98.  Plaintiff's case is distinguishable from Lowrance and more akin to

Wolff v. McDonnell, where the Supreme Court "ruled that due process requirements could

not be imposed on disciplinary hearings retroactively so as to compel prison officials to

expunge prison records containing determinations of misconduct, not in accord with required

procedures."  Id. (citing Wolff v. McDonnell, 418 U.S. 539, 573 (1974)).  Here, like in Wolff,

the allegedly flawed determinations of misconduct have never been ordered expunged.

Therefore, to the extent that plaintiff seeks retroactive relief from LaValley in his official

capacity, those claims must be dismissed.

Accordingly, it is recommended that defendants' motion on this ground be granted.


### a. Return of Plaintiff's Legal Notebooks

Plaintiff requests, as a form of injunctive relief, that his legal notebooks be return to

him.  Am. Compl at 70-71.

The Court finds that defendants' motion to dismiss the injunctive relief claim against

LaValley in his official capacity is inextricably linked with an analysis of whether the property

was taken without due process, and whether there were adequate state law remedies in

place to protect plaintiff's property interest in the notebooks. <u>See</u> <u>Morrison v. Lefevre</u>, 592 F. Supp. 1052, 1080-82 (S.D.N.Y. 1984). Plaintiff has pled in his complaint sufficient facts to establish a denial of access to the courts claim based on the confiscation of his legal notebooks. Dkt. No. 41 at 18-19. However, if the State provides adequate post-deprivation state-law remedies, then the plaintiff is not deprived of his property without due process of law. <u>Morrison</u>, 592 F. Supp. at 1080.

Neither party has briefed the issue of whether plaintiff received due process of law in regards to the alleged deprivation of his property. As such, the Court declines to reach the issue at this juncture, for if plaintiff did have adequate post-deprivation state remedies, the request for injunctive relief or damages based on the loss of his legal notebooks would fail.[8]

Accordingly, it is recommended that defendants motion on this ground be denied.

### E. Plaintiff's Second Amended Complaint

Plaintiff submitted his response to defendants' motion to dismiss on December 28, 2015. Dkt. No. 103. The response included a request for the Court to accept plaintiff's proposed Second Amended Complaint, attached to his opposition papers as Appendix 1. <u>See</u> Dkt. No. 103-1. Defendants have not filed any opposition to plaintiff's request. Plaintiff's request to file the Second Amended Complaint is timely as of the Pre-Trial Scheduling Order, which mandated that any application to amend the pleadings be filed by January 25, 2016. Dkt. No. 83. The Court interprets plaintiff's submission as a motion to

---

[8] The Court notes that "the return of property" is considered prospective injunctive relief, "to which the Eleventh Amendment is no barrier." <u>Plaza Health Labs., Inc. v. Perales</u>, No. 88 CIV. 6649 (JFK), 1992 WL 35937, at *2 (S.D.N.Y. Feb. 19, 1992) (citing <u>Edelman v. Jordon</u>, 415 U.S. 651, 677 (1974)).

amend the First Amended Complaint (Dkt. No. 42).

The Federal Rules of Civil Procedure provide that courts "should freely give leave" to amend a complaint "when justice so requires." FED R. CIV. P. 15(a)(2). The Second Circuit has stated that "[t]his permissive standard is consistent with our 'strong preference for resolving disputes on the merits.'" Williams v. Citigroup Inc., 659 F.3d 208, 212-13 (2d Cir. 2011) (citation omitted). Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 283 (2d Cir. 2000); see also Couloute v. Ryncarz, No. 11-CV-5986, 2012 WL 541089, at *3 (S.D.N.Y. Feb. 17, 2012) (quoting Monahan, 214 F.3d at 283); Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008). An amendment is futile if the proposed claim could not survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002) (citing Dougherty v. N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83,88 (2d Cir. 2002)); see also Malesko v. Corr. Servs. Corp., 229 F.3d 374, 382-84 (2d Cir. 2000) (holding that a proposed amended complaint seeking to assert claims barred by the statute of limitations is futile and must be denied), rev'd on other grounds, 534 U.S. 61 (2001). The decision to grant or deny a motion to amend is committed to the sound discretion of the trial court and the court's decision is not subject to review on appeal except for abuse of discretion. Monahan, 214 F.3d at 283.

The majority of plaintiff's proposed amendments do not change the sum and substance of his First Amended Complaint except in two areas. First, plaintiff attempts to state a cognizable denial of due process claim against Capt. Lacy, Corrections Counselor

Rankin, and DSH Prack[9] by amending paragraph fifteen (15) of the Amended Complaint.

Dkt. No. 103-2 (Second Amended Compl.) ¶ 95 n.15.  Judge Sannes dismissed this claim

because plaintiff had not shown that "he enjoyed an actual liberty interest in being free from

the SHU confinement with which he was sanctioned" because plaintiff admitted that the

punishment was never invoked or served by him.  Dkt. No. 41 at 7.  In general, SHU

confinement for a period of up to 101 days without unusual conditions generally will not

constitute an atypical hardship that implicates a liberty interest for purposes of a due

process claim.  Ortiz v. McBride, 380 F.3d 649, 654 (2d Cir. 2004).  But SHU confinement

for more than 305 days has been held atypical even if under "normal conditions[.]"  Colon v.

Howard, 215 F.3d 227, 231 (2d Cir. 2000).  Although plaintiff received the punishment of

additional SHU confinement during the December hearing, he admitted that he never

actually served that sentence, as his early release "negated [the penalty] in its entirety[.]"

Am. Compl. ¶ 95 n.15.

Plaintiff's rambling amended footnote that he attempts to submit does not cure the

defects identified in Judge Sannes' May 21, 2015 Decision and Order.  See Dkt. No. 103-1 ¶

95 n.15.  Plaintiff attempts to argue that there is a factual dispute as to what time was

"actually served" based on multiple SHU confinement sentences that he received at five

separate disciplinary hearings.  Id.  However, the Court finds that plaintiff may not attempt to

omit previously-alleged facts without adequate explanation.  Plaintiff's incoherent

explanation as to why he has omitted his statement that the four month penalty he received

---

9  This due process claim, based on a disciplinary hearing that took place in December 2010, was previously dismissed without prejudice by District Judge Sannes' Decision and Order, entered May 21, 2015. Dkt. No. 41 at 8.  As this was the only claim against Corrections Counselor Rankin, Rankin was also dismissed as a defendant in the action.  Id. at 8 n.15.

at the December 2010 was "negated in its entirety" and "never commenced" is unavailing. Kilkenny v. Law Office of Cushner & Garvey, L.L.P., No. 08-CV-588 (KMK), 2012 WL 1638326, at *5 (S.D.N.Y. May 8, 2012) (denying a pro se plaintiff's amendment where a statement made in the original complaint was omitted from the amended complaint).

Accordingly, plaintiff's request to add a denial of due process claim against Capt. Lacy, Corrections Counselor Rankin, and DSH Prack is denied.

As a second matter, plaintiff attempts to add defendants C.O. Kelly, C.O. Crusie, C.O. Mahuta, and Supt. LaValley to his Fifth Cause of Action for denial of access to the courts. Dkt. No. 103-1 ¶ 171. Plaintiff's only mention of these defendants is in regards to Capt. Lacy and C.O. Allan "reach[ing] agreement with . . . (Mahuta, Crusie, Kelly, Tamer) . . . to cause unconstitutional injury in the damage, destruction and taking of his legal papers and materials . . ." Am Compl. ¶ 151.

In order to state a claim against a defendant in a section 1983 action, a plaintiff must state facts sufficient to allege the defendant's personal involvement in the alleged constitutional violation. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). Personal involvement may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (additional citation omitted)).

Here, plaintiff states in a wholly conclusory fashion that C.O. Mahuta, C.O. Crusie, C.O. Kelly, and Sgt. Tamer "reached agreement" with Capt. Lacy and C.O. Allan in denying him access to the courts. Dkt. No. 103-1 ¶ 171. Because plaintiff has pled no facts to support such an allegation, his attempt to add their names to his Fifth Cause of Action is futile, as he has not established the requisite personal involvement of C.O. Mahuta, C.O. Crusie, C.O. Kelly, and Sgt, Tamer. See Nevarez v. Hunt, 770 F. Supp. 2d 565, 568 (W.D.N.Y. 2011) (dismissing section 1983 claims where the plaintiff alleged no facts to support the allegation that the defendant allowed the violations to occur).

Accordingly, plaintiff's request to amend his complaint to assert a denial of access to the courts claim against C.O. Mahuta, C.O. Kelly, C.O. Crusie, and Sgt. Tamer is denied.

The Court has reviewed the remainder of plaintiff's proposed additions and finds that there is no "evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." Monahan, 214 F.3d at 283.

Accordingly, plaintiff's motion to amend the First Amended Complaint is granted, consistent with the above.


### III. Conclusion

For the reasons stated above, it is hereby:

**RECOMMENDED** that defendants' motion to dismiss pursuant to Fed. R. Civ. P.

12(b)(6) (Dkt. No. 65) be:

1.   **GRANTED** as to plaintiff's request for injunctive relief in the form of the

expungement of his institutional and parole records regarding the

December 6, 2010 disciplinary hearing;

2.   **DENIED** as to (1) plaintiff's request for injunctive relief in the form of the

return of two (2) legal research notebooks; (2) plaintiff's excessive force

claims; and (3) plaintiff's conspiracy claims; and it is further

**ORDERED** that plaintiff's motion to amend (Dkt. No. 103) is **GRANTED** in part and

**DENIED** in part, consistent with the above; and it is further

**ORDERED**, that the amended complaint attached to plaintiff's motion (Dkt. No. 103-

1) be accepted for filing and serve as the operative complaint in this proceeding; it is

further

**ORDERED** that the Clerk serve a copy of this Report-Recommendation and Order on

the parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the

foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO**

**OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE**

**APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of

HHS, 892 F.2d 15 (2d Cir. 1989); see also 28 U.S.C. § 636(b)(1); Fᴇᴅ. R. Cɪᴠ. P. 72, 6(a),

6(e).

DATED:      February 8, 2016
            Albany, New York

*Christian F. Hummel*

Christian F. Hummel
U.S. Magistrate Judge