**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

FRANK J. POVOSKI, JR.,

                        Plaintiff,                  No. 9:14-CV-97
                                                           (BKS/CFH)

          v.

STEVEN LACY, et al.,

                        Defendants.

**APPEARANCES:**                    **OF COUNSEL:**

Frank J. Povoski, Jr.
161 Hillview Drive
Rochester, New York 14622
Plaintiff pro se

Hon. Eric T. Schneiderman                BRIAN W. MATULA, ESQ.
Attorney General for the                  Assistant Attorney General
State of New York
The Capitol
Albany, New York 12224-0341
Attorney for Defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

      Plaintiff pro se Frank J. Povoski, Jr. ("plaintiff"), a former inmate who was, at all

relevant times, in the custody of the New York State Department of Corrections and

Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to
28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

alleging that defendants Corrections Captain ("Capt.") Steven Lacy, Corrections Officer ("C.O.") Patrick Summo, C.O. Brian Kelly, C.O. John Cruise, C.O. Richard Mahuta, C.O. Thomas Tamer, C.O. James Pray, Director of Special Housing ("Dir.") Albert Prack, Lieutenant ("Lieut.") William Allan, Superintendent ("Supt.") Thomas LaValley, and Sergeant ("Sgt.") James Archambault – who, at all relevant times, were employed at Clinton Correctional Facility ("CCF") – violated his rights under the First, Eighth, and Fourteenth Amendments.  Dkt. No. 106 ("Sec. Am. Compl.").  At all relevant times, plaintiff was incarcerated at CCF.  Presently pending is defendants' Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 56.  Dkt. No. 132.  Plaintiff did not oppose the motion.  For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

## I. Background

### A. Plaintiff's Recitation of the Facts

The facts are related herein in the light most favorable to the plaintiff as the nonmoving party.  See subsection II (B) infra.  In his Second Amended Complaint, plaintiff alleges that in May 2010, he was elected to the Inmate Liaison Committee ("ILC")[2] at CCF.  Sec. Am. Comp. at ¶ 9.  The ILC "investigate[s] and facilitate[s] facility-wide grievances that effect the inmate population as a whole or part, and communicate[s] those grievances to administration . . . ."  Id.  That year, the ILC's investigations included the misappropriation of funds obtained through vending machine sales in the visiting room; assaults by staff

---

[2] The ILC is a "group of inmates elected to communicate grievances to officials."  Meriwether v. Coughlin, 879 F.2d 1037, 1039 (2d Cir. 1989).

members; and the death of an inmate, Leonard Strickland, that occurred in October 2010. Id. ¶ 10. In preparation for the November 2010 meeting, the ILC prepared eleven grievances for the Executive Team at CCF, which included Supt. LaValley and Capt. Lacy. Id. ¶ 11. On November 22, 2010, the ILC met with the Executive Team to discuss the grievances, which included the death of Strickland, the misappropriation of vending machine funds, and the failure to receive inmate account statements. Id. ¶ 12. Plaintiff led the discussion on these topics, stating that Supt. LaValley and Capt. Lacy were "doing little to curtail the numerous assaults that were being committed on inmates by staff." Id. Plaintiff stated that requests to inspect the records from the vending machines were being ignored, and asked to inspect those records. Id. Plaintiff also complained that inmate account statements had not been received and were being discarded prior to distribution. Id. ¶ 15. Plaintiff requested the reissuance of those statements. Id. In response, Supt. LaValley told plaintiff that each inmate would need to request the reissuance of their Inmate Account Statement, and authorized plaintiff to draft a prototype letter to assist inmates in making those requests. Id. On November 23, 2010, plaintiff drafted the prototype letter and sent it to Supt. LaValley. Id. ¶ 16.

On November 24, 2010, plaintiff provided the prototype letter to three inmates. Sec. Am. Compl. ¶ 17. C.O. Mahuta observed plaintiff distributing the letter, and approached plaintiff. Id. ¶ 18. After plaintiff explained the contents of the letter, C.O. Mahuta confiscated the remaining prototype letters. Id. ¶¶ 18-19. Plaintiff alleges that C.O. Mahuta contacted defendant Sgt. Tamer and proceeded to the disciplinary office to inquire what charges could be brought against plaintiff regarding the prototype letter, and a non-party employee told C.O. Mahuta that plaintiff had not violated any standards of inmate

3

behavior.  Id. ¶ 20-21.  C.O. Tamer informed C.O. Mahuta of plaintiff's statements at the November 22 ILC meeting, and of Supt. LaValley and Capt. Lacy's desire to issue plaintiff a Tier III misbehavior report to insure his confinement in the Special Housing Unit ("SHU")[3] and remove him from the ILC.  Id. ¶¶ 22-23.  C.O. Mahuta and C.O. Tamer planned to issue plaintiff a misbehavior report, charging him with solicitation and organization of an action detrimental to the order of the facility, despite knowing that the charges were false. Id. ¶¶ 24-25.

Following the confiscation of plaintiff's prototype letters, plaintiff proceeded to the scheduled inmate ILC meeting.  Sec. Am. Compl. ¶ 28.  At that meeting, plaintiff received a letter, sent to non-party inmate Hector Torres from a civilian, claiming that Capt. Lacy was an active member and the "Grand Wizard" in the local chapter of the Ku Klux Klan ("KKK").  Id.  Officers confiscated plaintiff's ILC folder and legal notebook while he was picking up his medication, including the KKK letter.  Id. ¶ 31.  Plaintiff was keeplocked[4] in his cell.  Id.

Plaintiff contends that, after inspection of the KKK letter, Supt. LaValley, Capt. Lacy, C.O. Tamer, and C.O. Mahuta mutually agreed to search plaintiff's cell, and if no

---

[3] SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ."  N.Y. COMP. CODES R. & REGS. tit 7, § 300.2(b).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

[4] "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities."  Green v. Bauvi, 46 F.3d 189, 192 (2d Cir. 1995); N.Y. COMP. CODES R. & REGS. tit. 7, § 301.6.

contraband was found, they would plant contraband.[5]  Id. ¶ 32-33.  C.O. Tamer instructed C.O. Kelly and C.O. Crusie to conduct a search of plaintiff's cell and to make sure they found "something substantial" that would result in plaintiff receiving a Tier III misbehavior report and SHU placement.  Id. ¶ 34.  C.O. Tamer then told C.O. Kelly and C.O. Crusie that "if they could not find any contraband to come see him . . . [because] he had 'something' they could justify the misbehavior report with."  Id.  C.O. Kelly and C.O. Crusie agreed to search plaintiff's cell.  Id.

On November 24, 2010, plaintiff was instructed to wait in the "slop sink" area while C.O. Kelly and C.O. Crusie searched his cell.  Sec. Am. Compl. ¶ 35.  During the search, plaintiff watched C.O. Crusie leave his cell and return a short time later.  Id. ¶ 36.  C.O. Kelly then exited plaintiff's cell and returned approximately fifteen minutes later carrying rolled up papers.  Id.  Both officers then exited the cell carrying items in a box.  Id.  Plaintiff returned to his cell and noticed that two legal notebooks were missing.  Id.  C.O. Kelly and C.O. Crusie issued plaintiff a misbehavior report for his possession of escape paraphernalia, stating that they had found a detailed, five-page pamphlet on how to pick locks in plaintiff's cell.  Id. ¶ 37.

Later that day, C.O. Tamer and non-party C.O. Trombley escorted plaintiff to SHU.  Sec. Am. Compl. ¶ 41.  During the escort, Sgt. Tamer said to plaintiff: "This is what you get for suing me and sticking your nose into things where it doesn't belong . . . . Lacy is going

---

[5] Plaintiff also alleges that on November 22, 2010, Supt. LaValley, Capt. Lacey, and Lieut. Allan mutually agreed to open and read plaintiff's incoming and outgoing mail which included correspondence with plaintiff's then attorney Neil Bubel and plaintiff's sister Sheila Povoski-Butler.  Sec. Am. Compl. ¶¶ 64, 69, 70.  These letters contained plaintiff's allegations of wrongdoing by staff members.  Id. ¶ 70.  Plaintiff alleges these letters were the bases for defendants' plan to issue false misbehavior reports and punish plaintiff for his complaints and grievances at the November 22, 2010 ILC Executive Team meeting.  Id. ¶¶ 71, 73.

to give you two years. I've already talked to him about it." Id. The next day, plaintiff was served with two misbehavior reports stemming from the events of the previous day. Id. ¶ 45. C.O. Summo was assigned to provide assistance to plaintiff in his upcoming disciplinary hearing. Id. ¶ 46. Plaintiff provided C.O. Summo with two lists of requests for assistance, which Summo failed to complete. Id.

On December 6, 2010, Capt. Lacy sentenced plaintiff to twenty-four months of SHU confinement. Sec. Am. Compl. ¶¶ 49, 50. On December 17, 2010, plaintiff mailed a request for a thirty-day extension to file his administrative appeal. Id. ¶ 51. On or about January 3, 2011, plaintiff mailed his administrative appeal to Dir. Prack, raising violations of New York State law and procedural due process rights. Id. ¶ 52. On January 26, 2011, Dir. Prack affirmed the disposition and modified plaintiff's SHU confinement to eighteen months. Id. ¶ 54.

On December 22, 2010, Lieut. Allan and three unidentified non-party officers escorted plaintiff to the hospital for "special watch" following his hunger strike. Sec. Am. Compl. ¶ 136. During that escort, the non-party officers punched plaintiff multiple times on his head and face, and pushed him into a concrete wall. Id. Plaintiff was handcuffed and waist-chained throughout the assault. Id. Plaintiff suffered bruising, contusions, and "other painful physical injuries." Id. After failing to intervene in the assault, Lieut. Allan stated: "that will teach you for opening your mouth . . . and writing grievances." Id. ¶ 137.

In March 2011, Supt. LaValley denied plaintiff transport to attend his father's funeral in retaliation for plaintiff's prior speech. Sec. Am. Compl. ¶ 61. On March 16, 2011, plaintiff mailed Supt. LaValley an appeal of the December 6, 2010 disciplinary hearing, raising various violations of New York State law and state procedural due process rights.

Id. ¶ 62.  Supt. LaValley failed to review the hearing.  Id.

On January 26, 2011, defendant Sgt. Archambault and defendant C.O. Pray escorted plaintiff to a teleconference pursuant to a pending case in the New York State Court of Claims.  Sec. Am. Compl. ¶ 139.  Plaintiff was handcuffed and waist-chained during the escort.  Id.  Prior to leaving the SHU, C.O. Pray ordered plaintiff to hand him his legal papers for inspection.  Id. ¶ 140.  C.O. Pray read plaintiff's Court of Claims petition out loud to the officers present.  Id.  C.O. Pray stated: "So you are suing my buddy Kevin, we know how to fix inmates like you."  Id.  C.O. Pray and Sgt. Archambault escorted plaintiff to the teleconference without physical incident, but taunted plaintiff, stating that they would assault him after the appearance, and that they knew the "ideal place to assault inmates."  Id.  On the return escort,  upon entering the Lower A/B Block corridor, Sgt. Archambault told C.O. Pray: "Go ahead, the hallway's clear."  Id. ¶ 141.  C.O. Pray pushed plaintiff into a brick wall and punched him multiple times on the head and neck while plaintiff was restrained.  Id. ¶ 139.  Plaintiff suffered bruising and contusions as a result. Id.

Plaintiff was confined in the SHU for three hundred and thirty eight days before being released to the general prison population on or about October 27, 2011,[6] after being credited a "time cut" for good behavior and cooperation. Sec. Am. Compl. ¶ 95.   Plaintiff challenged Capt. Lacy's December 6, 2010 determination upon his transfer to Great Meadows Correctional Facility and was determined not guilty of all charges.  Id. ¶ 98.

---

[6]  In his Second Amended Complaint, plaintiff alleges that he was released to the general prison population on or about October 27, 2011.  Sec. Am. Compl. ¶ 95.  This statement is at odds with plaintiff's "Affidavit in Opposition of Request for Re-Hearing," in which he states he was released from SHU on May 8, 2011 to the general population, but remained under keeplock confinement until October 24, 2011.  See Dkt. No. 132-9 at 3.

## B. Defendants' Recitation of the Facts

In support of this motion, defendants filed a Statement of Material Facts.[7]  On November 25, 2010, C.O. Mahuta and C.O. Kelly each issued plaintiff misbehavior reports charging him with (1) solicitation, (2) conduct detrimental to the order of the facility, and (3) possession of escape paraphernalia.  Id. ¶ 45.  Dkt. No. 132-2 ¶ 1.  A disciplinary hearing commenced on November 30, 2010, was adjourned to December 3, 2010, and completed on December 6, 2010.  Id. ¶ 2.  Plaintiff identified three inmate witnesses and two corrections officers that he wanted examined during the hearing.  Id. ¶ 3.  Plaintiff provided questions to the hearing officer to ask of the witnesses.  Id. ¶ 4.  The hearing officer told plaintiff that inmate witnesses could not testify in his presence because of security reasons.  Id. ¶ 5.  The hearing officer informed plaintiff that certain inmate witnesses and family members he requested were not relevant to the issues, and,

---

[7] Local Rule 7.1(a)(3) states:

> Summary Judgment Motions
>
> Any motion for summary judgment shall contain a Statement of Material Facts.  The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.
>
> The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

N.D.N.Y. L.R.  7.1(a)(3).

therefore, would not be called.  Id. ¶¶ 6, 7.  The hearing officer based his hearing determination on a November 24 misbehavior report that alleged a pamphlet on how to "pick" or "bump" a lock was found in plaintiff's cell.  Id. ¶¶ 8, 9.  The hearing officer also took into account plaintiff's previous involvement in a conspiracy to escape plot.  Id. ¶ 10.

On December 6, 2010, plaintiff was found not guilty of the solicitation charges set forth in the C.O. Mahuta's November 24 misbehavior report.  Dkt. No. 132-2 ¶ 11.  Plaintiff was found guilty of possession of escape paraphernalia, and Capt. Lacy sentenced him to twenty-two months in SHU.  Id. ¶ 12.  Capt. Lacy issued a written disposition which set forth the basis for his determination, together with the evidence relied upon.  Id. ¶ 13.

On January 3, 2011, plaintiff appealed the hearing determination to Dir. Prack, and on January 26, his sentence was reduced to eighteen months.  Dkt. No. 132-2 ¶¶ 14, 15.  In April 2011, plaintiff's sentence was further reduced to eleven months after entering into a confidential agreement with C.O. Allan and facility administrators allowing plaintiff to act as an informant for CCF.  Id. ¶ 16.  On May 8, 2011, plaintiff transferred out of SHU confinement after serving 152 days.  Id. ¶¶ 17,18.  In connection with the December 6, 2010 sentence, plaintiff spent a total of ninety days in SHU.  Id. ¶ 20.

Plaintiff initiated an Article 78 proceeding in state court challenging the November 2010 hearing and the December 6, 2010 decision.  Dkt. No. 132-2 ¶ 21.  Due to technical problems with the tape recording at plaintiff's initial disciplinary hearing, DOCCS requested that plaintiff's hearing and disciplinary decision be annulled, and the state court ordered plaintiff a *de novo* hearing concerning the charges.  Dkt. No. 132-2 ¶ 21.  Pursuant to this re-hearing, the charges against plaintiff were determined to be unsubstantiated, and the entire matter was stricken from plaintiff's record.  Id. ¶ 22.

As to plaintiff's December 22, 2010 and January 26, 2011 claims of excessive force, plaintiff first raised these claims in the Amended Complaint filed on August 1, 2014. Id. ¶¶ 29, 30. In the grievances regarding these claims, plaintiff failed to reference retaliation or his protected speech. Id. ¶¶ 34, 37.

## II. Discussion[8]

### A. Failure to Respond

Plaintiff failed to oppose defendants' Motion for Summary Judgment. Plaintiff requested two extensions of time to file his response to the present motion, which the Court granted. Dkt. Nos. 135, 136, 137, 138. Plaintiff was notified of the consequences of failing to respond to a summary judgment motion. Dkt. No. 134. Given this notice and the two extensions for plaintiff to file opposition papers, plaintiff was adequately apprised of the pendency of defendants' motion and the consequences of failing to respond.

"Where a non-movant fails to adequately oppose a properly supported factual assertion made in a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute, even if that movant is proceeding pro se." Jackson v. Onondaga Cty., 549 F. Supp. 2d 204, 209 (N.D.N.Y. 2008) (footnotes omitted). However, if "the district court chooses to conduct such an independent review of the record, any verified complaint filed by the plaintiff should be treated as an affidavit." Id. at 210. "[T]o be sufficient to create a factual issue for purposes of a summary judgment motion, an affidavit must, among other things, not be conclusory."

---

[8] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

<u>Id.</u>  Even if a verified complaint is deemed nonconclusory, "it may be insufficient to create a factual issue where it is (1) largely unsubstantiated by any other direct evidence and (2) so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint."  <u>Id.</u>  Plaintiff's Second Amended Complaint states on its final page, "I certify under penalty of perjury that the foregoing is true and correct."  Sec. Am. Compl. at 74.  Therefore, as plaintiff's complaint is verified,[9] the undersigned will accept plaintiff's Second Amended Complaint to the extent that the statements are based on the plaintiff's personal knowledge or are supported by the record.  <u>See</u> <u>Berry v. Marchinkowski</u>, 137 F. Supp. 3d 495, 530 (S.D.N.Y. 2005) (collecting cases to support the proposition that a court may consider an unsworn assertions on a motion for summary judgment where they are based on the plaintiff's personal knowledge and in light of special solicitude).

### B. Legal Standard

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion.  FED. R. CIV. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,

---

[9] The fact that plaintiff's Second Amended Complaint is not notarized is immaterial under 28 U.S.C. § 1746.  <u>See</u> <u>Hameed v. Pundt</u>, 964 F. Supp. 836, 840-41 (S.D.N.Y. 1997) (deeming an unnotarized document admissible in support of a summary judgment motion so long as that document contains the statement "I declare under penalty of perjury that the foregoing is true and correct.").

323 (1986).  A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party."  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)) (internal quotation marks omitted).  A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact.  Id.  "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper."  Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally," . . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . .  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse

12

> frivolous or vexatious filings by pro se litigants," . . . and that
> pro se status "does not exempt a party from compliance with
> relevant rules of procedural and substantive law . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

## C. Statute of Limitations

Defendants argue that plaintiff's claims are barred by the applicable statute of limitations. See Dkt. No. 132-1. Although there is no statute of limitations provision in § 1983, 25 U.S.C. § 1988 provides that state law may apply if it is consistent with the Constitution or federal law. 42 U.S.C. § 1988(a); Moor v. Cnty. of Alameda, 411 U.S. 693, 702-03 (1973). In New York State, the applicable statute of limitations for a § 1983 suit is three years, derived from the general or residual personal injury laws of the forum state. See N.Y. C.P.L.R. § 214(5) (MᴄKɪɴɴᴇʏ 2017); Owens v. Okure, 488 U.S. 235, 249-50 (1989); Romer v. Leary, 425 F.2d 186, 187 (2d Cir. 1970); Lugo v. Senkowski, 114 F. Supp. 2d 111, 113 (N.D.N.Y. 2000) (applying Owens in establishing a three-year statute of limitation for § 1983 claims). Thus, plaintiff's claims are subject to New York's three-year statute of limitations.

Federal law governs the determination of the accrual date for purposes of a § 1983 claim. Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002). A claim accrues "when the plaintiff knows or has reason to know" of the harm. Id. (citations and internal quotation marks omitted). "The crucial time for accrual purposes is when the plaintiff becomes aware that he [or she] is suffering from a wrong for which damages may be recovered in a civil action." Singleton v. City of New York, 632 F.2d 185, 192 (2d Cir. 1980). Additionally, "a

pro se prisoner's § 1983 complaint is deemed filed, for statute of limitations purposes, when it is delivered to prison officials." Tapia-Ortiz v. Doe, 171 F.3d 150, 152 (2d Cir. 1999) (citing Houston v. Lack, 487 U.S. 266, 270 (1988); Dory v. Ryan, 999 F.2d 679, 682 (2d Cir. 1993)).

However, the Second Circuit has held that equitable tolling is applicable to claims brought under the PLRA, otherwise a prisoner would risk the dismissal of his or her complaint based on untimeliness if he or she were to wait for a final administrative decision before filing suit. Gonzalez v. Hasty, 651 F.3d 318, 323-24 (2d Cir. 2011) (noting that the Ninth, Fifth, Seventh, and Sixth Circuits have all held that equitable tolling applies during the time in which a prisoner is exhausting his or her administrative remedies). Under the Second Circuit's rule, the equitable tolling period begins when a plaintiff first raises his administrative claim, and ends when the plaintiff's administrative remedies are deemed exhausted. Id. at 324. The statute of limitations, however, is only tolled during the period in which a prisoner is "actively exhausting" his administrative remedies. See id. at 322 n.2. The statute of limitations is not tolled during the period between the accrual of the claims and when the plaintiff began the administrative remedy process. Id. at 324.

Further, the "continuing violation doctrine" delays the accrual date for a claim challenging a discriminatory policy "'until the last discriminatory act in furtherance of [the discriminatory policy.]'". Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009) (quoting Cornwell v. Robinson, 23 F.3d 694, 703 (2d Cir. 1994)) (additional citation omitted). Thus, "the continuing violation doctrine is an 'exception to the normal knew-or-should-have-known accrual date.'" Id. (quoting Harris v. City of New York, 186 F.3d 243, 248 (2d Cir. 1999)).

14

Plaintiff filed his initial complaint in this action on January 16, 2014.  Dkt. No. 1 ("Compl.").  Therefore, absent exceptions, claims arising before January 16, 2011 are barred under the three-year statute of limitations.

### 1. Fourteenth Amendment Due Process

Plaintiff asserts due process violations related to his disciplinary hearing and confinement in SHU.  See Sec. Am. Compl ¶¶ 96, 97, 164-165.  Plaintiff's claim accrued on December 6, 2010 – when plaintiff received the hearing officer's determination sentencing him to SHU confinement.  Id. ¶ 50.  On or about January 3, 2011, plaintiff appealed his disciplinary hearing by mailing the administrative appeal to the Dir. of Special Housing.  Id. ¶ 52.  On January 26, 2011,[10] Dir. Prack affirmed the hearing judgment, and plaintiff's confinement was continued; however, Dir. Prack modified plaintiff's confinement to eighteen months.  Id. ¶ 53.  Defendants further argue that the defense of equitable tolling is inapplicable.  Dkt. No. 132-1 at 7.

Here, the statute of limitations was tolled for a total of twenty-three days, from January 3, 2011 until January 26, 2011, while plaintiff appealed his disciplinary proceeding.  As plaintiff did not appeal his disciplinary hearing disposition until January 3, which is twenty-eight days after the December 6, 2010 hearing, the statute of limitations was not tolled between December 6, 2010 and January 3, 2011.  See Trapani v. Coryer, No. 14-CV-683 (GTS/CFH), 2016 WL 8732638, at *6 (N.D.N.Y. June 6, 2016) (citing Gonzalez,

---

[10] Plaintiff alleges he was not immediately notified of the January 24, 2011 appeal disposition. Sec. Am. Compl. ¶ 54.  Plaintiff mailed the Dir. of Special Housing to inquire whether the hearing disposition had been reviewed.  Id. ¶ 56.  On or about February 15, 2011, plaintiff received a letter from the Dir. dated February 11, 2011, indicating that the hearing had been reviewed and the disposition affirmed on January 26, 2011.  Id. ¶ 57.

651 F.3d at 322 n.2) (" [I]f an inmate's claim accrues on January 1, 2010, and the inmate does not begin pursuing administrative remedies until December 1, 2010, any subsequent tolling that may be applicable would not include this eleven month period."). Therefore, the statute of limitations on plaintiff's Fourteenth Amendment claim arising out of his December 6, 2010 disciplinary hearing disposition began to run on December 6, 2010 and expired on December 29, 2013. Plaintiff signed the initial complaint in this action on January 16, 2014, eighteen days after the statute of limitations expired. See Compl. at 34.

The continuing violation doctrine does not apply to plaintiff's Fourteenth Amendment due process claims because "'each decision made without due process is a discrete violation, and the statute of limitations begins to run from the date that the plaintiff was denied the full and fair hearing he was entitled to.'" Crichlow v. Fischer, No. 6:15-CV-06252 EAW, 2017 WL 920753, at *5 (W.D.N.Y. Mar. 7, 2016) (quoting Bunting v. Fischer, No. 14-CV-0578-RJA-MJR, 2016 WL 4939389, at *3 (W.D.N.Y. Aug. 4, 2016)). Thus, although plaintiff exhausted his administrative remedies from January 3, 2011 until January 26, 2011, defendants' last discriminatory act was the December 6, 2010 disciplinary hearing, during which plaintiff claims that Capt. Lacy, C.O. Summo, Dir. Prack, and Supt. LaValley denied him a full and fair hearing. Id.; Shomo, 579 F.3d at 181. A "discrete violation" may accrue under the Fourteenth Amendment "each time that a defendant fails to provide an inmate with the notice, hearing, or evaluation to which he is entitled after a liberty interest attaches." Id. at 223. Plaintiff alleges that the defendants denied him a full and fair hearing at the December 6, 2010 disciplinary, which constitutes a discrete act that starts the running of the statute of limitations. Id. Therefore, because "each decision made without due process is a discrete act," plaintiff cannot benefit from the

continuing violation doctrine. <u>Crichlow</u>, 2017 WL 920753, at *5. Accordingly, plaintiff's Fourteenth Amendment claim is time-barred.

### 2. First Amendment Retaliation

Plaintiff claims that Capt. Lacy, Supt, LaValley, C.O. Mahuta, C.O. Tamer, C.O Kelly, C.O. Crusie, Lieut. Allan, C.O. Pray, and Sgt. Archambault denied him "his right to be free of retaliation for exercising his right to free speech." Sec. Am. Compl. ¶¶ 166-67.

### a. Defendants Capt. Lacy, Supt., LaValley, C.O. Mahuta, Sgt. Tamer, C.O Kelly, C.O. Crusie, and Lieut. Allan

Plaintiff contends that Capt. Lacy, Supt. LaValley, C.O. Mahuta, Sgt. Tamer, C.O. Kelly, C.O. Crusie, and Lieut. Allan subjected him to retaliation for his protected speech. The accrual dates for these claims are: November 24, 2010, November 25, 2010, and December 6, 2010. <u>See</u> Sec. Am. Compl. ¶¶ 27, 39, 70, 75.

The Second Circuit has held that "[t]he mere fact that the effects of retaliation are continuing does not make the retaliatory act itself a continuing one." <u>Gonzalez</u>, 802 F.3d at 222. "First Amendment retaliation claims typically accrue at the time that the allegedly wrongful conduct occurred." <u>Albritton v. Morris</u>, No. 13-CV-3708 (KMK), 2016 WL 1267799, at *10 (S.D.N.Y. Mar. 30, 2016) (citing <u>Smith v. Campbell</u>, 782 F.3d 93, 101 (2d Cir. 2015)) (additional citation omitted). Therefore, the statute of limitations "begins to run when the defendant has 'engaged in enough activity to make out an actionable claim.'" <u>Gonzalez</u>, 802 F.3d at 22 (quoting <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 111 (2002)). By contrast, the continuing violation doctrine only applies "to claims that by

their nature accrue only after the plaintiff has been subjected to some threshold amount of discrimination." Id. (citing Morgan, 536 U.S. at 114-15). The continuing violation doctrine does not apply to "discrete unlawful acts." Albritton, 2016 WL 1267799, at *10 (quoting Gonzalez, 802 F.3d at 220).

Plaintiff claims that on November 24, 2010, Capt. Lacy, Supt. LaValley, C.O. Mahuta, C.O. Tamer, C.O Kelly, C.O. Crusie, and Lieut. Allan orchestrated an elaborate conspiracy to cause his wrongful confinement in SHU, including issuing retaliatory cell searches, false misbehavior reports, and tampering with his mail — all in retaliation for plaintiff's protected speech at the ILC Executive Board meeting. Sec. Am. Compl. ¶¶ 27, 39, 70, 75. On November 25, 2010, C.O. Mahuta and C.O. Kelly issued plaintiff two misbehavior reports charging him with (1) solicitation, (2) organization of an action detrimental to the order of the facility, and (3) possession of escape paraphernalia. Id. ¶ 40. On December 6, 2010, Capt. Lacy found plaintiff guilty of possession of escape paraphernalia and sentenced plaintiff to twenty-four months of SHU confinement. Id. ¶¶ 11, 49. The next day, Lieut. Allan issued plaintiff a false misbehavior report charging him with solicitation, stemming from a letter plaintiff wrote to his sister attempting to obtain the "personal identifying information" of two former DOCCS employees. Id. ¶¶ 73-75. On December 7, 2010, plaintiff drafted a grievance alleging that defendants had issued false misbehavior reports "in retaliation for lawsuits, and investigations of deaths and assaults and fraud that was occurring at C.C.F., perpetrated by staff and executive team . . . . Also grieving the practices of executive staff promoting and condoning these transgressions" and the "reputed involvement" of CCF staff members, including Capt. Lacy, in "racially motivated hate groups" such as the KKK. Dkt. No. 132-4 ("Pl. Dep.") at 232. Plaintiff also

filed a separate grievance on December 7, 2010 against C.O. Mahuta alleging retaliation. Id. at 233-34.  The Inmate Grievance Program Committee responded on December 23, 2010 to both grievances.  Id.  Plaintiff alleges that he mailed appeals to the Superintendent on December 27, 2010, and never received a response.

Affording plaintiff special solicitude,[11] the statute of limitations was tolled for a total of twenty days, from December 7, 2010 until December 27, 2010 while plaintiff exhausted his administrative remedies.   Therefore, the statute of limitations on plaintiff's First Amendment retaliation claim expired on December 27, 2013.   Plaintiff signed the initial complaint in this action on January 16, 2014, twenty-one days after the statute of limitations expired.  See Compl. at 34.  Moreover, plaintiff has not pleaded facts sufficient to show that he was suffering an ongoing wrong – i.e., "'the existence of an ongoing policy . . . and some non-time barred acts taken in the furtherance of that policy.'"  Shomo, 579 F.3d at 182 (quoting Harris, 186 F.3d at 250).  Accordingly, plaintiff's First Amendment claim, insofar as it relates to defendants Capt. Lacy, Supt. LaValley, C.O. Mahuta, Sgt. Tamer, C.O Kelly, C.O. Crusie, and Lieut. Allan, is time-barred.

### b. Defendants C.O. Pray and Sgt. Archambault[12]

Plaintiff's retaliation claim against C.O. Pray and Sgt. Archambault accrued on January 26, 2011, when plaintiff claims he was subjected to excessive force in retaliation

---

[11]  DOCCS records confirm plaintiff's filing of a grievance and the administrative denial of that grievance, but fail to show that plaintiff filed an appeal.  Dkt. No. 132-1 at 23.  There is no evidence, other than plaintiff's own testimony, to establish whether he appealed to the Superintendent.

[12]  Defendants' motion does not address the retaliation claim insofar as it applies to C.O. Pray and Sgt. Archambault.

for his complaints against other officers.  Sec. Am. Compl. ¶¶ 139-41.  Although there is

some discrepancy whether plaintiff properly exhausted his administrative remedies,[13]

plaintiff filed a grievance against C.O. Pray and Sgt. Archambault on March 1, 2011.  Pl.

Dep. at 221.[14]  The IGRC received this grievance on March 15, 2011.  Dkt. No. 123-15 at

1.  The Superintendent issued a decision on April 18, 2011, finding no staff malfeasance.

Id. at 5.  On April 25, 2011, plaintiff appealed the decision to CORC.  Id.  On July 20, 2011,

CORC unanimously denied plaintiff's grievance.  Id. at 8.  Plaintiff contends that he did not

receive the CORC decision until August 8, 2011.  Dkt. No. 103 at 22.   Thus, affording

plaintiff special solicitude, the statute of limitations was tolled for 153 days while plaintiff

attempted to exhaust his administrative remedies.  The statute of limitations on plaintiff's

First Amendment retaliation claim against C.O. Pray and Sgt. Archambault expired on June

28, 2014.  Plaintiff first raised this claim in his amended complaint, filed on June 16, 2014.

See Dkt. No. 42.  Because plaintiff was actively pursuing his administrative remedies

during this period, the excessive force claim that arose from the January 26, 2011 incident

is timely, as plaintiff raised this claim before the statute of limitations expired.  Accordingly,

plaintiff's First Amendment claim, insofar as it relates to defendants C.O. Pray and Sgt.

Archambault, is not time-barred.


### 3. Conspiracy to Discipline and Confine

---

[13] Plaintiff's exhaustion of his administrative remedies will be further discussed.  See subsection III.D.1. infra.

[14] At various points in his second amended complaint, plaintiff alleges that CCF had a policy of obstructing the mailing of grievances.  See Pl. Dep. at 194-96.  In calculating the equitable tolling period, the use of either March 1, 2011 or January 26, 2011 would deem plaintiff's claims regarding the January 26 incident timely under the statute of limitations.  See subsection III.D.1. infra.

### a. Capt. Lacy, Supt. LaValley, C.O. Mahuta, Sgt. Tamer,
### C.O. Kelly, C.O. Crusie, and Lieut. Allan

Plaintiff claims that on November 24, 2010, Capt. Lacy, Supt. LaValley, C.O. Mahuta, C.O. Tamer, C.O. Kelly, and C.O. Crusie entered into an agreement to write false misbehavior reports against plaintiff with the intent confine plaintiff to SHU in retaliation for his protected speech at the November 22, 2010 ILC Executive Team meeting. Sec. Am. Compl. ¶ 40. On November 25, 2010, plaintiff received two misbehavior reports charging him with (1) solicitation, (2) conduct detrimental to the order of the facility, and (3) possession of escape paraphernalia. Id. ¶ 45. Plaintiff further claims that on December 6, 2010, Lieut. Allan entered into an agreement with Capt. Lacy and Supt. LaValley to punish plaintiff for his protected speech, and pursuant to this agreement, Lieut. Allan read plaintiff's outgoing mail and issued a misbehavior report charging plaintiff with solicitation for attempting to obtain the "personal identifying information" of two former DOCCS employees. Id. ¶¶ 73, 74, 76. Plaintiff was served a misbehavior report in connection with this charge on December 7, 2010. Id. ¶ 77. However, plaintiff contends that he did not become aware of defendants' alleged agreement until sometime in "late 2011" when "unnamed individuals" informed plaintiff of the conspiracy. See Pl. Dep. at 72, 96-97.

In Dory v. Ryan, the Second Circuit held that in assessing conspiracy claims, the doctrine of equitable estoppel extends the statute of limitations until the time when the plaintiff could have reasonably found out about the conspiracy. Dory, 999 F.2d at 681 (citing Keating v. Carey, 706 F.2d 377, 381, 382 (2d Cir. 1983) ("[W]hen the defendant fraudulently conceals the wrong, the time does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause

of action.").

Here, following plaintiff's timeline of events, it does not appear that he, as an inmate, could have known about the alleged conspiracy prior to someone telling him. See Dory, 999 F.2d at 681.  Pursuant to plaintiff's allegations, the statute of limitations on plaintiff's conspiracy claim accrued sometime in "late 2011" when he found out about the alleged conspiracy.  See Pl. Dep. at 72, 96-97.  However, "on a motion for summary judgment, [the Court] cannot rely on an unsupported inference . . . to resolve disputed issues of fact." Keating, 706 F.2d at 383.  Plaintiff has not offered evidence other than his self-serving testimony to demonstrate that unnamed individuals told him the conspiracy occurred. See Pl. Dep. at 72, 96-97.  Moreover, plaintiff acknowledged that he did not have direct knowledge whether such conversations or agreements between defendants even occurred. Id. at 96-97.  Therefore, because plaintiff has not offered any evidence to support his allegation that learned of the conspiracy in "late 2011," equitable estoppel does not apply/ Thus, plaintiff's conspiracy claim, insofar as it relates to Capt. Lacy, Supt. LaValley, C.O. Mahuta, C.O. Tamer, C.O. Kelly, C.O. Crusie, and Lieut. Allan, is time-barred.    See Howard v. Cherish, 575 F. Supp. 34, 35 (S.D.N.Y. 1983) (internal citation and quotation marks omitted) ("[S]ince summary judgment is designed to quickly end frivolous or meritless claims, the opposing party may not rest upon mere conclusory allegations or denials as a vehicle for obtaining a trial."); Pinaud v. Cty. of Suffolk, 52 F.3d 1139, 1157-58 (2d Cir. 1995) (holding, on review of a motion for summary judgment, "[t]o take advantage of [the doctrine of equitable estoppel], . . . a plaintiff must submit non-conclusory evidence of a conspiracy or other fraudulent wrong which precluded his possible discovery of the harms that he suffered."); Konovalchuk v. Cerminaro, No. 9:11-CV-01344 (MAD/CFH),

2014 WL 272428, at *14 (N.D.N.Y. Jan. 24, 2014) (citing <u>Matsushita Elec. Indus. Co.</u>, 475 U.S. 574, 586 (1986) ("[S]peculative and conclusory allegations are insufficient to withstand a summary judgment motion.")

### b. Defendants C.O. Pray and Sgt. Archambault

Plaintiff claims that on January 26, 2011,  C.O. Pray and Sgt. Archambault reached an agreement "as to the place to commit misuse of force" motivated by plaintiff's verbal complaint prior to his escort from SHU.  Sec. Am. Compl. ¶¶ 139, 142.  Although plaintiff filed a grievance against C.O. Pray and Sgt. Archambault regarding alleged excessive force, that grievance does not mention an alleged conspiracy.  <u>See</u> Dkt. No. 132-15.  Thus, plaintiff is not afforded the benefit of equitable tolling.

Plaintiff first initiated his conspiracy claims against defendants C.O. Pray and Sgt. Archambault in his amended complaint on June 16, 2014.  Dkt. No. 42.  Therefore, any wrongs that occurred before June 16, 2011 are time-barred under the three-year statute of limitations.  Plaintiff has failed to allege that C.O. Pray or Sgt. Archambault committed at least one wrongful act within the statutory time period to invoke the continuing violation doctrine, as his conspiracy claims center on the January 26, 2011 transport from SHU to a teleconference.  <u>See</u> <u>Gonzalez v. Wright</u>, 665 F. Supp. 2d 334, 350 (S.D.N.Y. 2009) ("[I]n order for the continuing violation doctrine to apply, plaintiff needed to show that those specific individuals committed at least one wrongful act within the statutory time period").  Therefore, plaintiff's conspiracy claim, insofar as it relates to defendants C.O. Pray and Sgt. Archambault, is time-barred.

#### 4. Access to the Courts

Plaintiff alleges that Capt. Lacy, Supt. LaValley, and Lieut. Allan[15] interfered with his "constitutional right of access to the courts under Article IV, First Amendment, Fifth Amendment and Fourteenth Amendment of the United States Constitution." Sec. Am. Compl. ¶ 171. Plaintiff contends that on November 24, 2010, November 27, 2010, and December 9, 2010, defendants caused a search of plaintiff's cell and hindered his access to the courts by confiscating his legal papers. Pl. Dep. at 210, 212. The latest possible date of accrual for plaintiff's claim is on December 9, 2010 – when plaintiff became aware that he may be "suffering from a wrong for which damages may be recovered." Singleton, 632 F.2d at 192. Plaintiff claims that he submitted a grievance to the Inmate Grievance Review Committee ("IGRC") with regard to "legal materials taken and moved to the SHU, legal materials confiscated." See id. at 237. The DOCCS' database shows that plaintiff appealed a grievance for "missing items after cell search" on December 8, 2010, but it is unclear if that grievance relates to the instant claim. See Dkt. No. 132-13 at 3.

Because the December 8, 2010 grievance for "legal materials confiscated" pre-dates the December 9, 2010 search, plaintiff cannot benefit from equitable tolling. Therefore, the statute of limitations on plaintiff's denial of access to the courts claim expired on December 9, 2013. Plaintiff signed the initial complaint in this action on January 16, 2014. See Compl. All of the alleged acts constituting interference with plaintiff's access to the courts occurred before January 16, 2011, and are outside of either of the three-year statutory

---

[15] Plaintiff's claims against C.O. Mahuta, C.O. Crusie, C.O. Kelly and Sgt. Tamer were terminated by the Court's March 9, 2016 Memorandum-Decision and Order, adopting and incorporating the undersigned's February 8, 2016 Report-Recommendation and Order. Dkt. Nos. 105, 107.

windows.  Therefore, plaintiff's denial of access to the courts claim against Capt. Lacy, Supt. LaValley, and Lieut. Allan is time-barred.

### 5. Improper SHU Conditions

Plaintiff alleges that Supt. LaValley, Capt. Lacy, and Lieut. Allan violated his Eighth Amendment right to be free from cruel and unusual punishment "when the defendants acted with deliberate indifference or with malice, in deprivation of the Plaintiff's basic human needs, and conduct which amount to calculated harassment unrelated to penological interests, causing unconstitutional, actual and physical injuries to the Plaintiff." Sec. Am. Compl. ¶ 173.  Plaintiff was confined in SHU from November 25, 2010 until May 8, 2011.  See Dkt. No. 132-9 at 3.  Plaintiff failed to specifically name Supt. LaValley, Capt. Lacy, or Lieut. Allan in any grievances he may have filed relating to improper SHU conditions.  See Pl. Dep. at 228-29.  Thus, plaintiff is not afforded the benefit of equitable tolling.

Plaintiff first raised claims against defendants Supt. LaValley, Capt. Lacy, and Lieut. Allan in his amended complaint, filed on June 16, 2014.  Dkt. No. 42.  Therefore, any claims that occurred before June 16, 2011 are time-barred under the three-year statute of limitations.  Plaintiff has not alleged that Supt. LaValley, Capt. Lacy, and Lieut. Allan committed at least one wrongful act within the statutory time period to invoke the continuing violation doctrine, as any violation committed due to improper SHU conditions ceased on his release from SHU on May 8, 2011.  See Wright, 665 F. Supp. 2d at 350 ("[I]n order for the continuing violation doctrine to apply, plaintiff needed to show that those specific individuals committed at least one wrongful act within the statutory time period").

Accordingly, because plaintiff did not allege a constitutional violation within the statutory period, plaintiff's Eighth Amendment improper SHU conditions claim is time-barred.

### 6. Eighth Amendment Excessive Force/Failure to Intervene

Plaintiff asserts two Eighth Amendment excessive force claims relating to incidents on December 22, 2010 and January 26, 2011.  Sec. Am. Compl. ¶ 175.  The undersigned addressed the timeliness of plaintiff's excessive force claims in the February 8, 2016 Report-Recommendation and Order, concluding that plaintiff's excessive force claims were timely because the statute of limitations was tolled while plaintiff actively pursued his administrative appeals.  Dkt. No. 105 at 10.  On March 9, 2016, the Court adopted the undersigned's Report-Recommendation and Order.  Dkt. No. 107.[16]

### D. Exhaustion of Administrative Remedies

Defendants contend that plaintiff failed to exhaust his administrative remedies through the available grievance procedures.  See Dkt. No. 132-1 at 16, 24, 33.  The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration.  Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82 (2006).  The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether

---

[16] The undersigned decided the timeliness of plaintiff's Eighth Amendment claims in the February 8, 2016 Report-Recommendation and Order.  However, were the undersigned to address again the timeliness of those claims, the undersigned would still find the claims timely based on the copies of plaintiff's grievance submissions submitted pursuant to defendants' Motion for Summary Judgment.

they allege excessive force or some other wrong." Porter, 534 U.S. at 532.  Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as money damages.  Porter, 534 U.S. at 524.  To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated.  Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply."  Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted).  Until recently, courts in this District followed a three-part test established by the Second Circuit in Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004) to determine exhaustion.  Under the test established in Hemphill, a plaintiff's failure to exhaust could be excused if the plaintiff established that his or her failure to exhaust was justified by "special circumstances."  Id.  However, the Supreme Court of the United States recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement."  Ross v. Blake, __ U.S. __,136 S. Ct. 1850, 1862 (2016).  As such, the special circumstances exception Hemphill, is no longer consistent with the statutory requirements of the PLRA.  Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016).

Although the Supreme Court's decision in Ross eliminates the "special circumstances" exception, courts must still consider the PLRA's "textual exception to mandatory exhaustion."  Ross, 136 S. Ct. at 1858.  Under this exception, courts must determine whether administrative remedies were "available" to a prisoner.  Id.  The Supreme Court identified three circumstances where administrative remedies may be

27

unavailable to a prisoner.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)).   "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use."  Id.  Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."   Id. at 1860.   Here, although plaintiff identifies consistent troubles with CCF's Inmate Grievance Program,[17] it is no dispute that, at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5 (2015).[18]

## 1. Retaliation/Excessive Force[19]

Defendant argues that plaintiff failed to exhaust his administrative remedies as to

---

[17] Plaintiff details obstruction by DOCCS employees of delivery of grievances.  See Sec. Am. Compl. ¶ 177; Pl. Dep. at 194-97.

[18] First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged incident.  N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)(1).  An IGP representative has sixteen calendar days to informally resolve the issue.  Id. § 701.5(b)(1).  If no informal resolution occurs, the IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing.  Id. §§ 701.5(b)(2)(i)-(ii).  If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination.  Id. § 701.5(c)(1).  If the superintendent's determination is unfavorable, the inmate may appeal to the Central Office Review Committee ("CORC") within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii).  CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received."  Id. § 701.5(d)(3)(ii).

[19] Exhaustion of plaintiff's retaliation claim is discussed in conjunction with plaintiff's excessive force claim, as they were grieved together.

his excessive force claims against C.O. Pray and Sgt. Archambault. Dkt. No. 132-1 at 19. Defendants do not address plaintiff's retaliation claim against C.O. Pray and Sgt. Archambault. Plaintiff contends that, on January 26, 2011, C.O. Pray and Sgt. Archambault subjected him to excessive force in retaliation for his complaints against fellow officers. Sec. Am. Compl. ¶ 140-141. Plaintiff claims that he filed a grievance on January 26, 2011, but that the IGRC failed to respond. See Dkt. No. 132-15 at 1; Pl. Dep. at 220-21. On March 1, 2011, plaintiff filed a second grievance regarding the January 26, 2011 incident. Pl. Dep. at 211. The IGRC received this grievance on March 15, 2011, but no decision is available. Dkt. No. 123-15 at 1, 7. The Superintendent issued a decision on April 18, 2011 finding no staff malfeasance. Id. at 5. On April 25, 2011, plaintiff appealed the decision to CORC. Id. On July 20, 2011, CORC unanimously denied plaintiff's appeal. Id. at 8. Plaintiff contends that he did not receive the CORC decision until August 8, 2018. Dkt. No. 103 at 22.

Even assuming that plaintiff first filed his grievance on March 1, 2011, the undersigned finds that plaintiff's filing his grievance thirteen days past the thirty-day time limitation was not so egregious as to constitute an unreasonable attempt to avail himself of the grievance process, as the IGRC accepted the grievance, and both the Superintendent and CORC issued decisions on the merits. See Hill v. Curcione, 657 F.3d 116, 125 (2d Cir. 2011) ("[T]he exhaustion requirement of the PLRA is satisfied by an untimely filing of a grievance if it is accepted and decided on the merits by the appropriate prison authority."). Thus, plaintiff has properly exhausted his administrative remedies. Defendants have not met their burden of showing that plaintiff failed to exhaust his administrative remedies as to his retaliation claim. Accordingly, it is recommended that

defendants' Motion for Summary Judgment on this ground be denied.

## 2. Excessive Force/Failure to Intervene

### a. December 22, 2010 incident – Lieut. Allan

Plaintiff claims that, during an escort, three unidentified, non-party corrections officers punched him on the head, face, and body, and pushed him into a concrete wall. Sec. Am. Compl. ¶ 136. Plaintiff further argues that Lieut. Allan, as the ranking officer in the escort, failed to intervene and prevent the non-party officers' excessive force. Id. ¶¶ 137, 175. Plaintiff filed a grievance on December 26, 2010 concerning the December 22 incident, which states that he was "assaulted by staff," but fails to name the staff members present. Dkt. No. 132-14. Defendants argue that plaintiff "readily acknowledges" the vagueness of his grievance, which lacks not only the officers' names, but the location of the assault, any mention of Lieut. Allan's involvement, or notice of the underlying facts. Dkt. No. 132-1 at 33. Defendants further contend that plaintiff's "obstructionist actions during the investigation completely defeated the purpose of the grievance process" and that "plaintiff should not be considered to have properly exhausted his administrative remedies." Id.

In New York State, the IGP regulations do not require that an inmate's grievance contain the name of the offending corrections officer. Espinal v. Goord, 558 F.3d 119, 126 (2d Cir. 2009). "[T]he IGP regulations offer the general guidance that a grievance should 'contain a concise, specific description of the problem,' . . . and the complaint form does not instruct the inmate to name the officials allegedly responsible for misconduct." Id.

(internal citations omitted).  Therefore, an inmate "is not required to name responsible parties in a grievance in order to exhaust his administrative remedies." Id.

Plaintiff's December 26, 2010 grievance states: "Assaulted by staff on December 22, 2010 causing various injuries.  This violated my 8th Amendment rights." Dkt. No.132-14 at 1.  On April 14, 2011, the Superintendent affirmed the IGRC's denial of plaintiff's grievance, finding that there was no staff malfeasance. Id. at 2.  Three days later, plaintiff appealed to CORC.  Id.  On July 13, 2011, CORC upheld the Superintendent's determination. Id. at 3.

Plaintiff's December 22, 2010 grievance, as written, fails to give adequate notice of his failure to protect claim against Lieut. Allan in order "to allow prison officials to take appropriate responsive measures."  PLRA's exhaustion requirement is "not dissimilar to the rules of notice pleading." Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004). It requires that prison officials be afforded the time and opportunity to address a complaint internally, "[i]n order to exhaust . . . inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." Id. The December 22 grievance only alleges an assault claim.  Dkt. No. 132-14.  Plaintiff testified that he first mentioned Lieut. Allan as one of the officers present during the incident in the IGRC interview, but there is no indication that plaintiff mentioned Lieut. Allan's failure to intervene on his behalf.  Pl. Dep. at 206.  Moreover, neither the Superintendent's decision nor the CORC decision mention Lieut. Allan or a failure to protect claim.  Dkt. No. 132-14 at 2-3.  There is nothing in plaintiff's grievance that would alert prison officials to investigate a subsequent failure to intervene claim against Lieut. Allan; thus, such claim was not properly grieved. See Luckerson v. Gooard, No. 00 Civ.

31

9508(JSR), 2002 WL 1628550, at *2 (S.D.N.Y. July 22, 2002) (determining the plaintiff's claim to be unexhausted and stating, "[f]or [the defendants] now to have to litigate a federal lawsuit premised on allegations that . . . they had no reason to address [in the IGRC] would make a mockery of the exhaustion requirement."). Indeed, "the mere fact that plaintiff filed some grievance, and fully appealed all the decisions on that grievance, does not automatically mean that he can now sue anyone who was in any way connected with the events giving rise to that grievance." Turner v. Goord, 376 F. Supp. 2d 321, 324 (W.D.N.Y. 2005). Thus, plaintiff has failed to properly exhaust his administrative remedies regarding his failure to intervene claim against Lieut. Allan. Therefore, defendants have met their burden in showing that plaintiff failed to exhaust administrative remedies. Accordingly, it is recommended that defendants' Motion for Summary Judgment on this ground be granted.

### E. First Amendment

Plaintiff contends that C.O. Pray and Sgt. Archambault "denied [him] his right to be free of retaliation for exercising his right to free speech . . . when the defendants took . . . adverse actions solely motivated by the Plaintiff's protected speech, causing actual physical and unconstitutional injuries to the Plaintiff." Sec. Am. Compl. ¶ 167. Courts are to "approach [First Amendment] retaliation claims by prisoners 'with skepticism and particular care[.]'" See, e.g., Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (quoting Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema, N. A., 534 U.S. 506 (2002)). A retaliation claim under Section 1983 may not be conclusory and must have some basis in specific facts that are not

inherently implausible on their face.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); South Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 110 (2d Cir. 2009).  "To prove a First Amendment retaliation claim under Section 1983, a prisoner must show that '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" Espinal, 558 F.3d at 128 (quoting Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004), overruled on other grounds by Swierkiewicz, 534 U.S. at 560).

### 1. Protected Conduct

To satisfy the first element of a retaliation claim, a plaintiff must show that he engaged in a protected activity.  See Espinal, 558 F.3d at 128.  "Reporting the wrongdoing of corrections officers and other prison officials . . . qualifies as protected speech under the First Amendment."  Moore v. Peters, 92 F. Supp. 3d 109, 120 (W.D.N.Y. 2015) (citing Ahlers v. Grygo, No. 02-CV-3256 (JG)(LB), 2009 WL 3587483, at *4 (E.D.N.Y. Oct. 27, 2009).  Plaintiff claims that C.O. Pray and Sgt. Archambault retaliated against him based on his complaints of wrongdoing at the November 22, 2010 ILC Executive Team meeting, as well as for "exercising his right of access to the courts and for [plaintiff's] complaint related to [C.O. Pray's] reading of his legal paper[s]."  Sec. Am. Compl. ¶ 139.  At the time, plaintiff was engaged in a lawsuit against C.O. Pray's "buddy Kevin," a non-party corrections officer.  Id. ¶ 140.

To the extent that plaintiff bases his retaliation claim against C.O. Pray and Sgt. Archambault on verbal complaints he made at the November 22, 2010 ILC Executive

Team meeting, such statements amount to protected conduct. Dolan v. Connolly, 794 F.3d 290, 292 (2d Cir. 2015) (finding that "action as a member of an ILC, i.e. the filing or voicing grievances on behalf of a prison population, qualifies as constitutionally protected conduct under the First and Fourteenth Amendments."). Moreover, plaintiff's lawsuit against a corrections officer qualifies as protected conduct. Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) ("Prisoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right."); Smith v. Kelly, 985 F. Supp. 2d 275, 279 (N.D.N.Y. 2013) (assessing a First Amendment retaliation claim where the plaintiff claimed that his complaints against a non-party corrections officer constituted protected conduct). As plaintiff alleged that defendants retaliated against him due to his protected conduct of voicing grievances as a member of the ILC and filing a lawsuit against a fellow officer, he has established the first prong of the retaliation analysis.

## 2. Adverse Action

"Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." Moore, 92 F. Supp. 3d at 120 (internal quotation marks and citation omitted). It is well-settled that excessive force constitutes adverse action for the purposes of a retaliation analysis. Baskerville v. Blot, 224 F. Supp. 2d 723, 731-32 (S.D.N.Y. 2002) ("[The plaintiff's] claim regarding the retaliatory assault sufficiently describes adverse conduct that would deter a reasonable inmate from exercising his constitutional rights."); see Flemming v. King, No. 14-CV-316 (DNH/CFH), 2016 WL 5219995, at *5 (N.D.N.Y.

June 20, 2016) ("[T]he alleged assault need not rise to the level of an Eighth Amendment excessive force violation in order to be considered an adverse action for purposes of First Amendment retaliation analysis.").    Therefore, plaintiff's allegation of excessive force constitutes adverse action.

### 3. Causal Connection

> In determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, a number of factors may be considered, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation.

Baskerville, 224 F. Supp. 2d at 732.  "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." Id.    The Second Circuit has established that no more than six months between the protected activity and the adverse action establishes the temporal proximity sufficient to support an inference of causal connection.  Espinal, 558 F.3d at 129.

Plaintiff has plausibly suggested facts supporting two of the factors.  Prior to the escort to the Court of Claims teleconference, plaintiff and C.O. Pray were discussing the basis for plaintiff's ongoing lawsuit, and it was determined that plaintiff had sued a fellow non-party corrections officer who was C.O. Pray's friend.  Pl. Dep. at 216-17.  During the escort back to SHU, C.O. Pray assaulted plaintiff.  Id.  C.O. Pray learned of plaintiff's lawsuit on the same day that he assaulted plaintiff; therefore, the temporal proximity between is well-within the Second Circuit's six-month time frame to sufficiently support an

inference of causal connection.  See Flemming, 2016 WL 5219995, at *5 (finding the fact that assault occurred on the same day that the plaintiff threatened to file a lawsuit against the defendants sufficed to establish temporal proximity); Jordan v. Garvin, No. 01CIV4393LTS/GWG, 2004 WL 302361, at *6 (S.D.N.Y. Feb. 17, 2004) ("[T]he existence of a temporal connection as close as the one present here – just two days – is sufficient by itself to establish the requisite inference of a causal connection.").  Moreover, upon learning that plaintiff had sued the non-party corrections officer, C.O. Pray allegedly stated, "[s]o you are suing my buddy Kevin, [sic] we know how to fix inmates like you, Povoski," and then proceed to joke with Sgt. Archambault "about their intent to physically [injure him] on his return from the video court appearance."  Sec. Am. Compl. at 57.  Defendants' statements suggest a retaliatory motive and signify that plaintiff's lawsuit may have been a "substantial or motivating factor" in the defendants' alleged decision to assault plaintiff. Baskerville, 224 F. Supp. 2d at 732.  Although plaintiff's comments at the November 22, 2010 ILC meeting constitute protected conduct and fall within the Second Circuit's six-month time frame, there is no indication that C.O. Pray or Sgt. Archambault attended that meeting – in fact, the minutes confirm that neither defendant was present.  Dkt. No. 132-5 at 1.  Moreover, neither C.O. Pray nor Sgt. Archambault mentioned plaintiff's November 22, 2010 comments prior to the assault.  Therefore, defendants have not met their burden of showing that there is no genuine issue of material fact as to plaintiff's retaliation claim against C.O. Pray and Sgt. Archambault.  Accordingly, it is recommended that defendants' Motion for Summary Judgment on this ground be denied.

## F. Eighth Amendment

Plaintiff claims that on January 26, 2011, C.O Pray assaulted him during an escort to a Court of Claims teleconference.  Sec. Am. Compl. ¶ 142.  Plaintiff further contends that Sgt. Archambault, the ranking supervisor, failed to intervene to prevent the assault. Id.  Defendants argue that plaintiff "has failed to provide any corroborating evidence of any assault on January 26, 2011."  Dkt. No. 132-1 at 37.  "The Eighth Amendment protects prisoners from cruel and unusual punishment by prison officials."  Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015) (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)).  To state a prima facie claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements.  Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999)

The objective element is "responsive to contemporary standards of decency" and requires a showing "that the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection."  Hudson v. McMillian, 503 U.S. 1, 9 (1992) (internal citations omitted); Blyden, 186 F.3d at 262.  However, "the malicious use of force to cause harm [ ] constitute[s an] Eighth Amendment violation per se [,]" regardless of the seriousness of the injuries.  Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9).  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  Hudson, 503 U.S. at 9-10 (internal quotation marks and citations omitted).  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."  Sims v. Artuz, 230 F.3d 14, 22 (2d Cir. 2000) (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." Sims, 230 F.3d at 21 (internal quotation marks and citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. (quoting Hudson, 503 U.S. at 7). In determining whether a defendant acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "[1] the extent of the injury and the mental state of the defendant[;] [2] . . . the need for the application of force; [3] the correlation between that need and the amount of force used; [4] the threat reasonably perceived by the defendants; and [5] any efforts made by the defendants to temper the severity of a forceful response." Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

## 1. Excessive Force

Viewing the evidence in the light most favorable to plaintiff, the undersigned declines to recommend dismissal of plaintiff's excessive force claim because there exists a genuine issue of material fact whether C.O. Pray used excessive force, and whether that force was malicious. See Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir. 1999) (internal quotation marks and citation omitted) ("[T]he malicious use of force to cause harm constitutes an Eighth Amendment violation[ ] per se . . . whether or not significant injury is evident."). Plaintiff testified that on the return escort, C.O. Pray led him to the secluded A-B corridor, and, after ensuring that the area was clear, "struck [him] . . . three times . . . [i]n the face and head." Pl. Dep. at 217. Plaintiff contends that he suffered bruising and swelling that lasted approximately one week. Id. at 219-20. However, plaintiff's medical records do not

reference any injury he allegedly sustained during the assault.  Dkt. No. 132-16 at 3-4. Still, "certain actions, including malicious use of force to cause harm, constitute Eighth Amendment violations *per se*."  Blyden, 186 F.3d at 263 (emphasis in original).  Although plaintiff's medical records do not support the injuries plaintiff purports to have incurred, "any or even no injuries resulting from the events plaintiff described could amount to a per se constitutional violation."  Brown v. Dubois, No. 9:15-CV-1515 (LEK/CFH), 2017 WL 2983305, at *9 (N.D.N.Y. June 16, 2017) (citing Baskerville v. Mulvaney, 411 F.3d 45, 48-49 (2d Cir. 2005)); Tafari v. McCarthy, 714 F. Supp. 2d 317, 352 (N.D.N.Y. 2010) (internal quotation marks and citation omitted) (denying the defendants' motion for summary judgment because although the plaintiff's injuries were de minimis, "the extent of injury suffered by the inmate is only one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.")

Assessing the subjective prong of the analysis, plaintiff testified that C.O. Pray assaulted him after learning that plaintiff had commenced a lawsuit against his friend, and that the assault was otherwise unprovoked. Pl. Dep. at 215, 217. A reasonable factfinder could find plaintiff's testimony credible and determine that C.O. Pray's actions were wanton and malicious. See Bylden, 196 F.3d at 263 ("[T]he malicious use of force to cause harm [ ] constitute[s an] Eighth Amendment violation per se."). Further, plaintiff testified that he was restrained in a waist chain and handcuffs, weighing against the notion that C.O. Pray could have reasonably perceived plaintiff to be a threat. Scott, 344 F.3d at 291. Such testimony could establish that C.O. Pray used force not to restore or maintain order, rather,

in retaliation for filing suit against a fellow corrections officer.  See Sims, 230 F.3d at 21.

As the governing law dictates that the evidence must be viewed in the light most favorable to plaintiff, the undersigned must credit plaintiff's version of events for purposes of this motion.  In re Dana Corp., 574 F.3d 129, 152 (2d Cir. 2009) ("In [reviewing all of the evidence in the record], the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.").  Defendants have not met their burden of showing that there is no genuine issue of material fact as to plaintiff's excessive force claim.  Accordingly, it is recommended that defendants' Motion for Summary Judgment on this ground be denied.


## 2. Failure to Intervene

Plaintiff claims that during the January 26, 2011 escort to a Court of Claims video conference, Sgt. Archambault, the ranking supervisor, failed to intervene when C.O. Pray assaulted him.  Sec. Am. Compl. ¶ 142.  "A corrections worker who, though not participating, is present while an assault upon an inmate occurs may nonetheless bear responsibility for any resulting constitutional deprivation."  Lewis v. Mollette, 752 F. Supp. 2d 233, 244 (N.D.N.Y. 2010).

> In order to establish liability on the part of a defendant under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: (1) possessed actual knowledge of the use by another corrections officer of excessive force; (2) had a realistic opportunity to intervene and prevent the harm from occurring; and (3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force.

Id. (internal citation and quotation marks omitted).  Viewing the facts in the light most

favorable to plaintiff, Sgt. Archambault alerted C.O. Pray that no one was around, stood close enough to C.O. Pray to be able to intervene, and failed to intervene to prevent C.O. Pray from striking plaintiff.  Pl. Dep. at 217.  Based on these facts, a fact-finder could conclude that Sgt. Archambault had the ability to intervene.  Therefore, defendants have not met their burden of showing that there is no genuine issue of material fact as to plaintiff's failure to intervene claim.  Accordingly, it is recommended that defendants' Motion for Summary Judgment on this ground be denied.


## IV. Conclusion

For the reasons stated herein, it is hereby:

**RECOMMENDED**, that defendant's Motion for Summary Judgment (Dkt. No. 132) be **GRANTED IN PART**:

(1) Insofar as it seeks dismissal of plaintiff's Fourteenth Amendment due process claim against Capt. Lacy, C.O. Summo, Dir. Prack, and Supt. LaValley,

(2) Insofar as it seeks dismissal of plaintiff's First Amendment retaliation claim against Capt. Lacy, Supt. LaValley, C.O. Mahuta, C.O. Tamer, C.O. Kelly, C.O. Crusie, and Lieut. Allan,

(3) Insofar as it seeks dismissal of plaintiff's First Amendment access to the courts claim against Capt. Lacy, C.O. Kelly, C.O. Crusie, C.O. Mahuta, Supt. LaValley, and Lieut. Allan,

(4) Insofar as it seeks dismissal of plaintiff's § 1983 conspiracy claims Capt.

Lacy, Supt. LaValley, C.O. Mahuta, C.O. Tamer, C.O. Kelly, C.O. Crusie, Lieut. Allan, C.O. Pray, and Sgt. Archambault,

(5) Insofar as it seeks dismissal of plaintiff's Eighth Amendment claim against Capt. Lacy, Lieut. Allan, and Supt. LaValley for improper SHU conditions,

(6) Insofar as it seeks dismissal of plaintiff's Eighth Amendment failure to intervene claim against Lieut. Allan,

the motion be **GRANTED**, and the claims be **DISMISSED** with prejudice; and it is further

**RECOMMENDED**, that defendants' Motion for Summary Judgment (Dkt. No. 132) be **DENIED IN PART**:

(1) Insofar as it seeks dismissal of plaintiff's First Amendment retaliation claim against C.O. Pray and Sgt. Archambault,

(2) Insofar as it seeks dismissal of plaintiff's Eighth Amendment excessive force claim against C.O. Pray,

(3) Insofar as it seeks dismissal of plaintiff's Eighth Amendment failure to intervene claim against Sgt. Archambault,

the motion be **DENIED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on the parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the

foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).[20]

Dated: December 13, 2017
       Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[20]  If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(C).

43